## Staunton

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A FOREIGN CORPORATION v. NICHOLAS C. ARGHYRIS, AN INFANT, ETC.

September 7, 1949.

Record No. 3524.

Present, All the Justices.

The opinion states the case.

*John B. Browder* and *Robert Lewis Young*, for the plaintiff in error.

*Broudy & Broudy*, for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Nicholas C. Arghyris, an infant, who sued by his father and next friend, Christ Arghyris, on the 5th day of December, 1947, recovered a judgment against Dennis R. Bohler for the sum of $5,000 for personal injuries sustained by him as a result of the negligent operation of a motor vehicle by Bohler. On the same day Christ Arghyris, the father of

Nicholas C. Arghyris, also obtained a judgment against Dennis R. Bohler for $1,542.95 for damages arising out of the injuries sustained by his infant son. Executions were issued on these judgments and returned unsatisfied, marked "No Effects."

Subsequently, the same two plaintiffs instituted separate notices of motion for judgment against the State Farm Mutual Automobile Insurance Company, alleging its liability for the amount of the judgments obtained by them against Bohler, by reason of an automobile liability insurance policy issued by it to George Newman, the owner of the automobile involved in the accident mentioned, insuring Newman, and also Bohler who was driving the motor vehicle with the permission of Newman, at the time of the infliction of the injuries. Virginia Code, 1942 (Michie), section 4326a.

The insurance company appeared on June 14, 1948, and filed its separate grounds of defense to each action and denied any liability on its part to the respective plaintiffs on the ground that Bohler had failed to comply with a condition of the policy requiring his assistance and cooperation with the company, in the event the automobile insured was involved in an accident.

On motion of the parties the causes were consolidated and set for trial on July 29, 1948. On that day, by consent of all parties, the whole matter of law and fact was heard and submitted to the trial court for determination. The issue was whether or not the failure of Bohler to comply with the cooperation clause of the insurance policy resulted in prejudice to the interests of the company. The court expressed the opinion that "The evidence did not sustain prejudice in any way by the false statements of Bohler or that the company had been deceived in any way as to what the true facts were," and entered a final judgment against the insurance company for the respective amounts awarded the plaintiffs in their actions against Bohler. From this judgment this writ of error was allowed the insurance company.

For purposes of convenience, Arghyris and his son will be sometimes hereinafter referred to as plaintiffs, and the insurance company as the defendant, the respective positions they occupied in the trial court.

The facts of the case are without material conflict; but, because of the questions involved, will be set out somewhat at length.

On April 19, 1947, the defendant issued to George V. Newman, a petty officer in the Marine Corps, stationed at Norfolk, Virginia, its automobile liability policy covering Newman's 1938 Ford sedan. It was in the standard form, containing the usual omnibus provisions, extending its coverage to any one operating the automobile with Newman's permission.

Dennis R. Bohler, a petty officer of the Navy, and a friend of Newman, owned a more recent model automobile, which Newman borrowed to drive on a trip, leaving his Ford for Bohler's use.

On a day prior to May 12, 1947, not fixed by the evidence, Bohler telephoned McDonald Meadors, one of the company's agents, in Norfolk, and the one who had issued the policy to Newman, informing him that he, Bohler, had been erroneously accused of being involved in an accident. Meadors referred him to John Cole, a claim adjuster of the defendant company.

On May 12, 1947, Newman and Bohler went to Meadors' office, and Meadors sent them to Cole's office. Newman and Bohler informed Cole that Bohler had been arrested, charged with having struck Nicholas C. Arghyris in front of the Rosna Theater, on 35th street, in the city of Norfolk, Virginia, on May 7, 1947, and having failed to stop at the scene of the accident, give his name, or render assistance to the injured person. Bohler denied that he was involved in the accident charged against him, and denied that he had been on 35th street the night of May 7th. He gave a written statement about an accident which he claimed he had the same night on Granby street, five or six blocks distant from 35th street. He stated that there his car had been side-

swiped on its left side by another car which had not stopped. At the same conference, Newman executed a proof of loss form stating that Bohler denied being involved in the accident on 35th street. Bohler then told Cole that he had employed Mr. Ralph H. Daughton, a Norfolk attorney, to represent him on the criminal charge. Cole called Daughton, and asked him to have a court reporter present at the trial, at the cost of the insurance company.

That day, May 12th, or within a day or two thereafter, Cole went with Newman and Bohler to look at Newman's car, which was in the possession of the police department. They found that its left front fender, left headlight, and left side of the hood were damaged.

Having been told that the police department also had the front license plate of the car, which had been picked up at the scene of the accident, in its possession, Cole examined the license bracket on the front bumper of the car about twelve inches from the right-hand side. It appeared to him that the license had been pulled off, as Bohler contended. Cole said that he did not then doubt Bohler's statement that he was not involved in the accident, because he saw no reason for him to make a false statement.

On May 20th, Bohler was given a preliminary hearing in the police court on the criminal charge. Cole was present a part of the time. After it had been disclosed that the front license plate of the car had been picked up at the scene of the accident and a young boy had testified that as the car involved in the collision was driven away from the scene, he had taken its rear license number, which number was the same as that of the license plate found in the street, Cole requested Bohler and Newman to come to his office. He said he then became doubtful whether Bohler had told him the truth, and told Bohler that he didn't see how he was going to get around the testimony against him. He had Bohler sign a non-waiver agreement, in the usual form, which provided that any action taken by the insurance company in investigating, objecting to, or defending any claim growing

out of the accident in question should not be construed as a waiver of its right to deny liability at any time.

Bohler was bound over to the grand jury by the trial justice, and at the June term, 1947, was indicted for a felony under Virginia Code, 1942 (Michie), sections 2154(104) and (105), for leaving the scene of an accident without stopping.

The notice of motion for judgments in favor of the plaintiffs against Bohler were returnable on June 21, 1947. The defense of these actions was turned over by the insurance company to Mr. W. R. Ashburn, an attorney at law. Ashburn wrote Newman and Bohler to come to his office for the purpose of conferring about the cases. Newman came but Bohler did not. Ashburn prepared affidavits denying operation and control and mailed the same to Bohler, asking that the latter bring them to Ashburn's office for acknowledgment before his secretary, who was a notary public. Bohler, however, took them to Cole's office, where they were retyped, the name of Cole's secretary substituted as notary, and executed them. The same day Bohler appeared at Ashburn's office where, after a critical interrogation, he repeated the same statement which he had formerly made to Cole, denying involvement in any accident on 35th street. He said he could not account for the fact that the license plate from his car had been found at the scene of the accident, unless some one had taken it from his car or it had fallen off when he passed through the street on a former occasion. He again explained the dents and scars on his car as arising from a collision on Granby street.

On June 30, 1947, Bohler was tried in the Corporation Court of the city of Norfolk on a criminal charge. He entered a plea of "Not Guilty," and testified in his own behalf, again denying any connection with the accident on 35th street. The jury was unable to agree upon a verdict, and was discharged.

On July 23, 1947, without consulting Cole or Ashburn, Bohler appeared in the corporation court and pleaded guilty

to the hit and run charge, and received a sentence of ten days in jail and a fine of $250.

Bohler subsequently said that his conclusion to plead guilty was based upon the fear that if he received a sentence of more than six months, he would be automatically discharged from the Navy after years of service, and, therefore, he thought it advisable to follow the advice of his counsel, plead guilty, and take a short sentence of ten days and a small fine.

A stenographer of Cole read a report of the criminal trial in a newspaper and informed Cole. Cole wrote to Bohler for an explanation, but received no reply. After Bohler had served his jail sentence, Cole called him by telephone at the Naval Base and Bohler promised to come to Cole's office the next morning. Bohler failed to keep the appointment, so Cole called him again, whereupon he promised to come the following morning at nine o'clock. Again Bohler failed to appear, and Cole called the Naval Base and learned that Bohler had been transferred to Newport, Rhode Island.

After the plaintiffs brought these proceedings against the insurance company, Ashburn wrote Bohler several letters requesting him to come to his office for the purpose of conferring about the cases. None of them was answered except by wire, shortly before December 5, 1947, the trial date, from Bohler saying that he would be present at the trial, and a telephone call on the afternoon before the trial, wherein Bohler stated that he could not see Ashburn that afternoon; but would come to his office the following morning.

Shortly after nine o'clock, on the day of the trial, Bohler appeared in Ashburn's office and, upon being asked how he reconciled the affidavits denying operation and control with his plea of guilty to the hit and run charge against him, stated that he had entered the plea of guilty on advice of the attorney representing him in that proceeding. Upon being asked what his testimony would be if he were introduced as a witness in his own behalf, in the civil cases, Bohler seemed reluctant to discuss the matter, saying that,

in view of his plea of guilty, he did not see how he could deny that he was the driver of the car which injured young Arghyris. Bohler authorized Ashburn to represent him. Upon Ashburn's recommendation, Bohler agreed to confess liability in the two cases. This was done without waiving the company's reservation of rights, and an agreement signed to that effect.

Prior to the trial of the cases against Bohler, Ashburn had authorization from the defendant company to compromise and settle the cases up to a certain amount. On the morning of the trial, after a second reservation of rights was taken from Bohler on behalf of the defendant, a further attempt was made by Ashburn to effect a compromise pursuant to his authorization. The attempt being fruitless, the cases proceeded to trial on the question of damages only, and judgments were entered against Bohler. No appeals were noted.

Ashburn testified that inasmuch as the aggregate amount awarded the plaintiffs was a smaller sum than they had agreed to accept before trial and not too far beyond what he probably would have settled for, he assumed that the insurance company would pay the judgments; that he wrote the company advising it of the outcome of the two cases against Bohler and received a reply from it that it was of opinion it was not liable; and that, on January 12, 1948, he so notified counsel for the plaintiffs.

Condition 5 of the policy issued to Newman reads as follows:

"Action Against Company—Coverages A and B. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Condition 16 of the policy is as follows:

"Assistance and Cooperation of the Insured. The insured

shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

The insurance company contends that the insured's failure to comply with the foregoing policy provisions justifies its denial of liability, regardless of whether it was prejudiced by the breach, and that, in any event, the evidence shows that its interests were prejudiced as a matter of law and fact. On the other hand, the plaintiffs insist that, despite the non-cooperation of the insured, the insurance company was acquainted with sufficient facts to show its liability, and that the only real question was that of the amount of damages and, under the circumstances, it was not prejudiced in the ascertainment of that amount. They do not contend that Bohler complied with the cooperation condition, nor could they well do so, in view of the facts stated.

The policy in this case contains in clear terms an exact statement of the loss insured against and the conditions under which liability for such loss shall become fixed against the insurance company. Its terms and conditions constitute a contract between the company and the insured under which Bohler, by virtue of the permissive use given by Newman, occupies the same status as Newman. *Combs* v. *Hunt*, 140 Va. 627, 640, 125 S. E. 661, 37 A. L. R. 621; *Indemnity Ins. Co.* v. *Davis*, 150 Va. 778, 788, 143 S. E. 328; *Holland Supply Corp.* v. *State Farm Mut. Automobile Ins. Co.*, 166 Va. 331, 335, 186 S. E. 56.

The company had no contract with Arghyris or his son. They claim through Bohler, have his rights and are under his disabilities. Bohler must have done those things which he contracted to do before he had a right to recover against the company. If Bohler had no such right, Arghyris and

his son were without right. *Hunter* v. *Hollingsworth*, 165 Va. 583, 589, 183 S. E. 508.

In addition to the requirements of the policy which we have hereinabove mentioned, there was another condition that, "When an accident occurs, written notice shall be given by and on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and all available witnesses."

The provisions requiring notice and cooperation are "an essential part of the contract of insurance and by the express terms of the policy a failure to comply with its provisions forfeits the right of recovery." *Harmon* v. *Farm Bureau Mut. Automobile Ins. Co.*, 172 Va. 61, 64, 65, 200 S. E. 616.

"Notice of an accident and information of any demands made upon, or actions brought against, an assured are reasonable provisions to be inserted in a liability insurance policy. Performance of these provisions is usually regarded as a condition precedent to the right to recover on the policy." *Temple* v. *Virginia Auto Mut. Ins. Co.*, 181 Va. 561, 575, 25 S. E. (2d) 268.

We have not heretofore had occasion to decide whether or not an insurance company must show prejudice in order to escape liability upon a breach of a policy provision for cooperation by the insured. The only case in Virginia involving the question of cooperation is that of *Indemnity Ins. Co.* v. *Davis, supra*. In that case the company contended it was prejudiced by the failure of the insured to cooperate with it; but that question was not necessary for a decision because the jury found, under the circumstances there, that the insured had cooperated with the company. On appeal we held that the company having, before action was brought, unjustifiably repudiated its contract for indemnity on the ground that the accused had violated the provisions of the cooperation clause of its policy, waived its right to complain of a compromise verdict against the insured, unless the latter

was guilty of fraudulent connivance in allowing the recovery against him.

There are, however, numerous decisions from other jurisdictions touching upon the question of cooperation by the insured. Comprehensive annotations upon the subject, "Liability insurance; clause requiring assured's cooperation, aid or assistance," and a review of the cases, are found in 72 A. L. R. 1446; 98 A. L. R. 1465; and 139 A. L. R. 771. In some of the cases reviewed the insurer was relieved where there was a clear violation of the cooperation clause, without a showing of actual prejudice. In others relief was granted the insurer where it appeared there was non-compliance and consequent prejudice. In most of the cases where relief was refused, it appeared that non-compliance on the part of the insured related to trivial or inconsequential matters. In a few others, under the peculiar circumstances there existing, it was held that the insurer must show prejudice to justify relief from liability. In section 5 (a-2) of each of the annotations, lack of cooperation in some inconsequential or immaterial respect and lack of prejudice to the insurer are considered and treated together.

In dealing with the legal nature of the cooperation clause in 98 A. L. R. 1467, the general rule is stated as follows:

"And, as stated in the earlier annotation, a co-operation clause is in the nature of a condition precedent to liability on the insurer's part for the loss growing out of a claim with the disposition of which the insured's co-operation is demanded, and a failure to perform, in the absence of a waiver or estoppel, constitutes a defense to liability on the policy, if the insurer so elects."

The greater weight of current authority and the sounder reason, we think, support the views expressed by Chief Judge Cardoza in the case of *Coleman* v. *New Amsterdam Cas. Co.*, 247 N. Y. 271, 160 N. E. 367, 369, 72 A. L. R. 1443. There it was said:

"The plaintiff makes the point that the default should be condoned, since there is no evidence that cooperation, however willing, would have defeated the claim for damages or

diminished its extent. For all that appears, the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Cooperation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant where the consequences may vary with the fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."

In *Kindervater* v. *Motorists Cas. Ins. Co.*, 120 N. J. L. 373, 199 A. 606, 608, followed in *Brodsky* v. *Motorists Cas. Ins. Co.*, 112 N. J. L. 211, 170 A. 243, this was said:

"An interpretation that would require a demonstration of substantial detriment to the insurer, as the result of the breach of such a condition, would seriously impair its practical efficacy. It suffices if the condition has been breached in a material or essential particular . . . 'Such conditions would be robbed of nearly all practical value if, in applying them, the question of the validity of the professed claim must be investigated.'"

In a later New Jersey case, *Whittle* v. *Associated Indemnity Corp.*, 130 N. J. L. 576, 33 A. (2d) 866, 869, the court said:

"And if the test were that it must be shown that the failure to fulfill the conditions precedent prejudiced the insurer, the trial judge might well have been justified, under the proofs, in submitting the case to the jury. But that is not the test. The test is: Was a condition precedent of the policy unfulfilled by the assured? If it was then, if the insurer so chooses and it did so choose, the policy is at an end . . . , for, 'there has been a failure to fulfill a condition upon which (insurer's) obligation is dependent'. *Coleman* v. *New Amsterdam Cas. Co.*, 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443."

In *Brogdon* v. *American Automobile Ins. Co.*, 290 Mich. 130, 287 N. W. 406, 408, a case in which the insured denied

driving the car, the court, after reviewing the authorities at some length, said:

"But a careful examination of the cases above cited would indicate that he is required to give truthful information, and he is required at his peril to give such information. And, if it be found that he has intentionally and wilfully failed to give the information, no matter whether or not it would in fact create a liability or relieve himself from liability, they are both treated the same."

See also, *Glens Falls Indemnity Co.* v. *Keliher*, 88 N. H. 253, 187 A. 473, 476, 477; *Hunt* v. *Dollar*, 224 Wis. 48, 271 N. W. 405; *Buckner* v. *Buckner*, 207 Wis. 303, 241 N. W. 342; *Luntz* v. *Stern*, 135 Ohio St. 225, 20 N. E. (2d) 241, 245; *Home Indemnity Co.* v. *Standard Acci. Ins. Co.*, 167 F. (2d) 919; *Conold* v. *Stern*, 138 Ohio St. 352, 35 N. E. (2d) 133, 137 A. L. R. 1003; *Cameron* v. *Berger*, 336 Pa. 229, 7 A. (2d) 293; *Roberts* v. *Indemnity Ins. Co.*, 114 W. Va. 252, 171 S. E. 533; and *Curran* v. *Connecticut Indemnity Co.*, 127 Conn. 692, 20 A. (2d) 87.

In 29 Am. Jur., Insurance, section 789, this is said:

"In liability insurance policies, provisions are usually to be found requiring the co-operation and assistance of the insured in resisting claims, etc., or, more particularly, requiring that he shall aid in securing information, evidence, and the attendance of witnesses, in effecting settlements, in prosecuting appeals, etc. Such a provision is commonly called a 'co-operation clause.' It is in the nature of a condition precedent to liability on the insurer's part; and a breach of the provision by the insured constitutes, in the absence of a waiver by or estoppel of the insurer, a defense to liability on the policy, even though it does not appear that harm resulted to the insurer from such breach. To constitute a breach of a co-operation clause by the insured, however, there must be a lack of co-operation in some substantial and material respect; a technical or inconsequential lack of co-operation or a misstatement to the insurer is immaterial in such respect."

See also 45 C. J. S., Insurance, section 585 c, page 382.

The views which we have expressed in prior cases in this jurisdiction with regard to the construction and inviolability of unambiguous voluntary indemnity contracts, not unreasonable or contrary to public policy, place us in accord with the foregoing authorities.

Plaintiffs rely on *Levy* v. *Indemnity Ins. Co.* (La. App.), 8 So. (2d) 774; *Rochon* v. *Preferred Acci. Ins. Co.*, 118 Conn. 190, 171 A. 429; *Petersen* v. *Preferred Acci. Ins. Co.*, 114 N. J. L. 180, 176 A. 897; and *Conroy* v. *Commercial Cas. Ins. Co.*, 292 Pa. 219, 140 A. 905, in which, under the circumstances of the specific case, it was held that in order to constitute breach of the cooperation clause, the conduct of the insured must have adversely affected the interests of the insurer in some substantial and material way; on *Cowell* v. *Employers' Indemnity Corp.*, 326 Mo. 1103, 34 S. W. (2d) 705, which held that a false statement does not of itself constitute a violation of the cooperation clause; and on *Bernadich* v. *Bernadich*, 287 Mich. 137, 283 N. W. 5, where it was said that a prompt withdrawal of a false statement by the insured to the company cures default in the absence of a showing of prejudice to the company by delay in telling the truth.

These cases, it would appear, place more emphasis on the materiality of the default than on the materiality of the contract provision. The views expressed misconceive the effect of a refusal to comply with a condition of the policy, upon which obligation is dependent. Overlooked is the provision that if the condition is broken the policy is terminated, if the insurer so elects. As Chief Judge Cardozo said, "The case is not one of the breach of a mere covenant where the consequences may vary with the fluctuations of the damage."

In *Harmon* v. *Farm Bureau Mut. Automobile Ins. Co.*, *supra*, we held that a delay by the insured of two and one-half years in sending the company notice of the institution of the suit against him constituted a clear violation of the policy as a matter of law, regardless of prejudice.

In *Northwestern Nat. Ins. Co.* v. *Cohen*, 138 Va. 177, 121 S. E. 507, the insured delayed two days in giving notice of a

loss. The question in issue was whether the delay was "so long as to be obviously a non-compliance with the contract," and we held that was a question for the jury, under the circumstances of that case. The question there related to the time of performance. The question of prejudice to the insurer was not considered in the opinion.

In *Hunter* v. *Hollingsworth, supra,* we said that "Within reasonable limits the time of delay is a jury question."

The controlling question in those cases was whether or not there was a breach of the contract under the circumstances in evidence. There was no contention as to the effect of an actual breach.

We repeat the statement by Chief Justice Prentis in *Bawden* v. *American Cent. Ins. Co.,* 153 Va. 416, 150 S. E. 257, 260, and quoted by Justice Holt, later Chief Justice, in *Hunter* v. *Hollingsworth, supra,* at page 589:

"This court has gone as far as any court in enforcing insurance policies in favor of the assured, and resolving all fair doubts in favor of the assured in such cases, but this proper rule cannot be so extended as to disregard valid provisions of the contract."

In construing an insurance contract in *Combs* v. *Hunt, supra,* with reference to its fairness to the insured, Judge Crump said:

"But the court cannot read into the written instrument a stipulation it does not contain, nor can we give it a construction plainly in conflict with its expressed purport."

We may say that the rule requiring a liberal construction of insurance contracts does not confer a right or impose a duty on the courts to add new conditions, provisions, or exceptions to such contracts which increase or decrease the obligations of the parties thereto.

The word "cooperate" needs no interpretation. It is a simple word with a simple meaning, thoroughly understood by simple minds to mean aid and assistance. It would be a strange definition which would make its meaning inapplicable to the actions of Bohler. The intention and purpose of the cooperation clause is equally clear. It requires

that the facts of an accident should be fairly, fully, and accurately disclosed. The purpose expressed by the language could hardly be made plainer. The company was entitled to know "as soon as practicable" whether its insured was involved in an accident. It is quite obvious that where an insurer is to prepare an adequate defense in cases of contested liability, or where it desires to make a settlement without litigation, it must have from its insured a complete and truthful statement of the facts, made in the spirit of cooperation and assistance; an insured, in many cases, being the only source of information available to the insurer.

■ It seems perfectly apparent that the conduct of Bohler was a clear violation of the conditions of the policy. The evidence discloses a wilful and deliberate breach by him of a material and essential clause, whereby he repeatedly misled the insurance company over a period of many months. He not only failed to claim the protection of the policy; but denied the liability of the company to him or to any one claiming through him, and this handicapped the insurer in the consideration of its liability. The insurer was, by the acts of Bohler, deprived of an opportunity to determine for itself, through an immediate investigation, aided by a true statement from its insured, whether it was liable and, if liable, whether it was advisable to make a settlement with the insured person without suit. There was a withholding of information, the making of untruthful statements, and the concealment of necessary relevant, and material facts, actions not calculated to aid the insurer. There is no question of a minor variance in his testimony, of unintentional or inadvertent statements, or of mere failure to disclose some collateral fact. Bohler failed to give to the company written notice of the accident of May 7th "as soon as practicable." He never gave any notice, except indirectly, until the day of the trial of the proceedings against him, that is, on December 5, 1947. His credibility was destroyed by reason of his contradictory testimony and affidavits, and whether or not he had any defense to the charge of negligence in operating the automobile, the conclusion is inescapable, that it could have

made little difference had the company been required to rely upon his testimony. He did not merely neglect the performance of the cooperation condition, he wilfully and deliberately failed to comply with it. Nothing is more mischievous or dangerous in litigation than a client who deliberately falsifies the facts in the preparation of his case.

It can hardly be thought that Bohler could have successfully maintained an action against the insurance company for reimbursement had he paid the judgments against him. His judgment creditors here had the same rights he had, no more and no less. *Hunter* v. *Hollingsworth, supra; Maryland Cas. Co.* v. *Toney*, 178 Va. 196, 200, 16 S. E. (2d) 340; *State Farm Mut. Automobile Ins. Co.* v. *Pederson*, 185 Va. 941, 954, 41 S. E. (2d) 64.

It is insisted by the plaintiffs that the defendant is liable to the extent of $5,000, whether or not Bohler breached the cooperation clause of the policy. The theory of this contention is based on condition 7 of the policy, and the provisions of the "Virginia Motor Vehicle Safety Responsibility Act," Acts 1944, chapter 384, Virginia Code (Michie), Cumulative Supp., 1948, sections 2154(a6) and (a12).

Section 7 of the insurance policy reads as follows:

"Financial Responsibility Laws—Coverages A and B. Such insurance as is afforded by this policy for bodily injury liability, or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance, or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event, in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

The answer to this contention is that condition 7 merely provides for compliance with the provisions of the

motor vehicle financial responsibility laws "which shall be applicable." The policy was not issued under the name of Newman or Bohler to meet the "Virginia Motor Vehicle Safety Responsibility Act." It was not "certified" as provided therein. Code, section 2154(a4). It was a purely voluntary act between the insurance company and Newman. The Act is not here applicable. *Cohen* v. *Metropolitan Cas. Ins. Co.*, 233 App. Div. 340, 252 N. Y. S. 841, 842; *Brodsky* v. *Motorists Cas. Ins. Co.*, 112 N. J. L. 211, 170 A. 243, affirmed in 114 N. J. L. 154, 176 A. 143; *Anderson* v. *American Automobile Ins. Co.*, 50 R. I. 502, 149 A. 797.

■ The Act of 1944 was amended by Acts 1948, chapter 201, Code of Va. (Michie), Cumulative Supp. 1948, section 2154(a14)a, to remove any doubt as to its application under purely voluntary policies, in the following language:

"It is provided, however, that the provisions of this act shall not apply to any policy of insurance except as to liability thereunder incurred after certification thereof as proof of financial responsibility."

The amendment of 1948 wrought no change in the existing law; but was merely a statutory declaration thereof.

For the reasons hereinbefore stated, the judgment complained of will be set aside and the final judgment will be here entered for the State Farm Mutual Automobile Insurance Company, the plaintiff in error.

*Reversed and final judgment.*