# Staunton

ONIE W. SHIPP, ADMINISTRATOR OF THE ESTATE OF MARY FRANCES SHIPP, DECEASED v. THE CONNECTICUT INDEMNITY COMPANY, A CORPORATION.

September 10, 1952.

Record No. 3963.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*W. R. Ashburn* and *E. C. Kellam,* for the plaintiff in error.

*Willcox, Cooke & Willcox* and *R. B. Spindle, III,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The main question on this appeal is whether as a matter of law an insured violated the cooperation clause of the automobile liability insurance policy upon which appellant, plaintiff below, sought to compel the insurance company, defendant below, to pay a judgment recovered by him against the insured.

The policy was issued to Charles Albert Moser, the owner of the car, but at the time of the accident the car was being driven with his permission by Pat Moser, his brother, who thereby became, under the terms of the policy, an additional insured.

About four o'clock in the morning of August 11, 1949, Pat Moser was driving the automobile into Norfolk from a tavern on or near the Virginia Beach boulevard. With him in the car were Mary Frances Shipp, Russell Brinn and Luther Messick. Due to Moser's negligence the car was wrecked, causing injuries to Miss Shipp and Brinn from which they soon died. Miss Shipp's administrator brought an action and recovered a judgment against Moser and his committee (Moser having been sent to the penitentiary because of the accident) for $15,000. Not being able to collect the judgment from Moser, the administrator brought the present action to compel payment by the insurance company.

At the conclusion of all the testimony the court struck out the plaintiff's evidence on the ground that "the evidence in this case is uncontradicted and shows that there was a definite lack or failure of cooperation on the part of Pat Moser" in failing to disclose who was driving. A verdict for the defendant followed, on which the court entered the judgment appealed from.

The insurance policy had the usual provisions for giving written notice of an accident containing particulars sufficient to identify the insured, information as to the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses; and provided that no action should lie against the company unless, as a condition precedent, the insured had fully complied with all the terms of the policy. The clause which the company contends that Moser violated is this:

"The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and

shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *.''

Shortly after the accident all the occupants of the car were taken to the hospital. Moser was not badly hurt and as soon as he was released from the hospital he was arrested and put in jail. Next day, August 12, his wife, at his direction, notified the insurance company of the accident. Nobody came to investigate that day so Mrs. Moser called again the following morning and Mr. Marquart, attorney for the company, came to the home of Moser, who had then been released on bail. Marquart questioned Moser and wrote out a statement which Moser signed. Moser said that he did not read the statement and that it was not read to him, but that he signed it under the impression that it was a form he was filling out to show that he had reported the accident to the company, adding, ''They are the very words that the man told me on my front porch.''

According to the statement, which is dated August 13, Moser said that he was driving when they left the tavern on the fatal trip; that Miss Shipp and Brinn were in the front seat with him and Messick was on the back seat asleep. On the way a State trooper stopped them and told Moser to take off one of the exhaust pipes on the car. After the trooper left, Moser got a bottle of whiskey from the car and he, Miss Shipp and Brinn each took a drink. Miss Shipp was then sitting in the driver's seat. He, Moser, got into the back seat of the car and went to sleep before it started and he remembered nothing after that until he felt an impact and was on the floor in the back of the car. He asked Messick whether he was awake. Messick said he was and then Moser reached up and opened the left door, he and Messick got out of the car and sat down on the sidewalk. An officer told him that the left rear of the car had hit a tree near the curb and then the right side hit another tree.

Over plaintiff's objection Moser was called and examined by the defendant as an adverse witness. On that examination he testified that he did not tell Marquart that Miss Shipp was sitting in the driver's seat; that he did not tell him he went to sleep before the car started, or that he did not remember anything after that until he felt the impact. He denied telling Marquart that he reached up and opened the left door and that he and Messick got out; but he admitted that he did tell

Marquart that he got into the back seat and never did tell him he got out of it before the accident. He testified that he did not tell Marquart that he was not driving the car, and that Marquart did not ask him who was driving, ''as well as my memory goes.'' He said that he did not tell anybody that he was driving or wasn't driving until he was tried in court.

On examination by plaintiff's counsel, Moser testified that after taking the statement Marquart never sought him out again or asked him for any information concerning the accident. He said that shortly after the accident he took his brother to see Marquart at his office, as Marquart had requested, but that Marquart was not then in his office so he left a message that he could find him at his home. He testified that the only thing Marquart ever told him to do was to send to the company's attorneys any suit papers he might get and that he followed those instructions to the best of his ability; that the insurance company never asked him to do anything that he failed or refused to do in connection with the accident.

He was asked by plaintiff's counsel whether he ever concealed anything from Marquart that the latter asked him about. He answered, ''Nothing other than the driving.'' Then followed this question and answer: ''Q. And you did not tell him that you were the driver, and you did not tell him that you were not the driver? A. I just ignored the question.''

On further questioning by defendant's counsel he stated that he did not remember whether Marquart asked him who was driving; that ''If he did ask me, I withheld it from him, yes, sir.''

The statement of August 13 was introduced in evidence. It gave the names and addresses of the three other people in the car. Moser testified that Marquart secured the addresses from some other source as he did not know them. The statement gave other incidents and circumstances of the accident; mentioned that a colored boy across the street told Messick he saw the accident and that Moser would get the names of some Ford plant workers who were passing the scene. It also stated that Moser was charged with homicide, reckless driving and driving without a permit; that the case was set for trial on August 19, and gave the name of Moser's attorney.

Marquart died on April 13, 1951, before the present suit came to trial in May, 1951.

Moser was given a hearing in police court on August 19

and sent to the grand jury. He was tried in corporation court on September 29, 1949, at which time he testified that he was driving the car. He was convicted and sentenced to the penitentiary. That was the first time, he said, that he ever admitted to anybody that he was driving the automobile.

The first action for damages was brought against him October 31, 1949. The papers were served on him in the city jail. He had the jailer call his wife, who took them in person to Marquart's office. The second suit for the same cause of action was brought against Moser's committee on April 17, 1950, while he was in prison camp and he likewise sent the papers in that suit to the company's attorneys. The two suits were afterwards combined and one judgment rendered against Moser and his committee.

In the meantime, on September 30, 1949, the day after Moser's trial and sentence, the company's attorneys wrote him that any action taken by the company in investigating any claim or handling any litigation was not to be construed as a waiver of the company's right to deny liability. A further letter of similar import was sent to Moser on November 25, 1949, after the first suit was brought; and on February 12, 1950, the attorneys wrote Moser, then still in prison camp, that the company would not defend the suit.

Defendant contends that the evidence establishes that, deliberately and wilfully, Moser withheld from the defendant the fact that he was driving the automobile, informed the company that Miss Shipp was driving, and withheld the names of all witnesses known to him; and, further, that if defendant had been allowed to introduce the deposition of Bowden, it would have appeared that Moser deliberately persuaded Bowden to withhold the information that Moser was driving.

If the evidence established those things as a matter of law, then Moser breached the cooperation clause of the insurance contract and the trial court correctly held that there was no liability on the insurance company in this action.

In *State Farm Mut. Automobile Ins. Co.* v. *Arghyris,* 189 Va. 913, 55 S. E. (2d) 16, we decided that if it be proved that the insured has wilfully breached the cooperation clause of his contract in a material or essential particular, it is not necessary for the insurance company to go farther and show that it was prejudiced by such breach before it can avoid liability.

That was on the ground, supported by the greater weight of authority and the sounder reason, that cooperation with the insurer was one of the conditions of the policy, a term of the contract which the insured had agreed to perform, and upon the performance of which his right to recover depended. To require the insurer to show prejudice, it was pointed out, would add to the contract something the parties had not included, and would rob the clause of nearly all practical value.

But in the *Arghyris Case* the plaintiffs did "not contend that Bohler (the insured) complied with the cooperation condition, nor could they well do so, in view of the facts stated." 189 Va. at p. 913, 55 S. E. (2d) at p. 20. We said it was "perfectly apparent that the conduct of Bohler was a clear violation of the conditions of the policy. The evidence discloses a wilful and deliberate breach by him of a material and essential clause, whereby he repeatedly misled the insurance company over a period of many months." 189 Va. at p. 929, 55 S. E. (2d) at p. 23.

In the present case the question is whether the evidence proved as a matter of law that Moser did in fact breach the cooperation clause by failing to cooperate in some substantial and material respect. 189 Va. at p. 926, 55 S. E. (2d) at p. 22.

In the *Arghyris Case* we said that the word "cooperate" simply means to aid and assist; that the cooperation clause required that the facts of an accident should be fairly, fully and accurately disclosed. "The company was entitled to know 'as soon as practicable' whether its insured was involved in an accident. It is quite obvious that where an insurer is to prepare an adequate defense in cases of contested liability, or where it desires to make a settlement without litigation, it must have from its insured a complete and truthful statement of the facts, made in the spirit of cooperation and assistance; an insured, in many cases, being the only source of information available to the insurer." 189 Va. at p. 929, 55 S. E. (2d) at p. 23.

Here the company was informed as soon as practicable that its insured was involved in an accident. The company's attorney came and questioned Moser, and the latter signed what he wrote. If that statement correctly recorded Moser's answers, the necessary inference is that Moser was not driving when the accident happened. But Moser testified that he did not make the statements on which that inference depends. He did not tell Mar-

quart, so he testified, that Miss Shipp was in the driver's seat or that he went to sleep in the back seat and did not remember anything after that until the accident. If those things be taken from the statement, then there remains no inference, or at most a very slight inference, that Moser was not driving.

Ordinarily the important question of who was driving the car would not be left to inference, either strong or slight; but there would be a direct inquiry and a demand for a direct answer on that point. It does not appear that there was a direct inquiry. Moser first testified that Marquart did not ask him that question. He qualified that later by saying that he did not remember whether he did or not, but that if he did ask him, then he withheld that information from him.

Some explanation may be found in the circumstances. Moser had just got out of jail. He told Marquart that he was charged with homicide, reckless driving and driving without a permit, and that he was to be tried a week later. A statement then made, oral or written, that he was the driver of the car might well preclude any favorable termination of the criminal prosecution. It was not to the advantage of the company to insist that Moser announce his guilt, nor was it incredible that Marquart would not press him on the point, particularly if he was already convinced about it.

■ While the insurer does not have to show that it was prejudiced by failure to cooperate, the absence of prejudice, if it appears, is a circumstance to be considered on the question of the materiality of the information which it is claimed the insured failed to give.

■ There was evidence tending to show that Marquart was not misled as to who was driving by what Moser told him. The plaintiff testified that about two weeks after the accident, which was more than a month before Moser's criminal trial, Marquart came to the Shipp home and stated that he was representing the insurance company "where Mary Frances Shipp was killed by Pat Moser, and he wanted to know where was she sitting at in the automobile." Defendant argues that this testimony was excluded, but the record does not bear that out, although it is not entirely clear. It was admissible evidence bearing upon the materiality of the omitted information.

■ Plaintiff testified that about a week afterwards, which would be about three weeks after the accident and still nearly a

month before Moser testified at his trial that he was driving, Marquart again came to his home while he was at breakfast to see if he could make some settlement about the death of plaintiff's decedent. This testimony was excluded, but we think it should have been admitted under the circumstances.

■ There was no substantial evidence of any breach by Moser of the cooperation provision of the policy, other than his failure to tell Marquart he was the driver. Whether that was a wilful concealment of a material fact under the particular circumstances of this case was properly a jury question.

The court excluded the deposition of Bowden, offered by the defendant, and the defendant assigns that as cross-error. Bowden testified that he followed the Moser car and that Moser was driving when the accident happened; but that he did not tell Marquart that, but told him that Moser was sitting against the building when he got there. Asked why he did that, he said that before the police officers came to the wreck Moser told him not to say anything to them about his driving the car; that later at the hospital Moser asked him what he told the police officers and again said, "Don't put me behind the wheel." He said Moser's reasons for wanting it left in doubt as to who was driving was that he did not want to go to the penitentiary. Bowden said that, because of Moser's request, when he testified in police court he did not say Moser was driving. On cross-examination Bowden said he first talked to Marquart a day or two after the accident in the office of the police sergeant who had sent for him; that he did not then say that Moser was driving or was not driving, but did tell them that Brinn was on the outside and Miss Shipp in the center.

■ We think this deposition should have been admitted into evidence, as bearing on the question of cooperation; but we do not think that of itself or in connection with the other evidence it established as a matter of law that Moser committed such breach of the cooperation clause of the contract as to terminate the policy. This was a failure to cooperate with the police, but not necessarily a wilful failure to cooperate with the insurance company.

■ Whether or not in a particular instance the insured has failed to give the cooperation contemplated by the policy is ordinarily a question of fact. Blashfield, Automobile Law, Perm. Ed., Vol. 6, p. 413.

Upon that issue the insurer has the burden of proof. *Indemnity Co.* v. *Davis,* 150 Va. 778, 143 S. E. 328; *MacClure* v. *Accident, etc., Ins. Co.,* 229 N. C. 305, 49 S. E. (2d) 742; Annotations, 72 A.L.R. at p. 1453, 98 A.L.R. at p. 1468, 139 A.L.R. at p. 777.

The question can be decided as a matter of law only when reasonable men should not differ as to the proper inferences to be drawn from the facts proved. *Southern Stevedoring Corp.* v. *Harris,* 190 Va. 628, 633, 58 S. E. (2d) 302, 304.

Its solution here depends largely on the credibility of Moser and the proper inferences to be drawn from all the circumstances shown in evidence. Those are questions which should have been determined by the jury and it was error for the court to take them away from the jury and decide them.

 There is no evidence to support the plaintiff's contention that the defendant waived its right to rely on a breach of the cooperation clause. The issue to be submitted to the jury on retrial is whether Moser wilfully failed to cooperate with the company in a material and substantial respect.

Upon that issue the testimony of Bowden should be admitted. The statements taken by Marquart and offered in evidence by the defendant as Exhibits Nos. 6-D to 11-D, both inclusive, and D-X, were also admissible, as bearing on the scope and result of his investigation.

 It was not error to allow the defendant to call and examine Moser as an adverse witness. Section 8-291, Code 1950; *Butler* v. *Parrocha,* 186 Va. 426, 43 S. E. (2d) 1.

The judgment appealed from is reversed and the case remanded for a new trial to be had in accordance with this opinion.

*Reversed and remanded.*