**LUMBERMENS MUTUAL CASUALTY COMPANY**
and
**Ray Dalton**

v.

**HARLEYSVILLE MUTUAL CASUALTY COMPANY**
and
**State Farm Mutual Automobile Insurance Company.**

**Civ. A. No. 1268.**

United States District Court
W. D. Virginia,
Roanoke Division.

June 19, 1968.

Philip M. Sadler, Gilmer, Sadler, Ingram, Thomas & Sutherland, Pulaski, Va., for Lumbermens Mutual Cas.

Duane E. Mink, Dalton, Poff, Turk & Stone, Radford, Va., for Ray Dalton.

Stuart B. Campbell, Jr., Campbell & Campbell, Wytheville, Va., for State Farm.

Richard C. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for Harleysville Mutual.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This case was appealed from two prior opinions rendered by this court, both being styled as Southern v. Lumbermens Mutual Casualty Company, and reported in 234 F.Supp. 876 (W.D.Va. 1964) and 236 F.Supp. 370 (W.D.Va. 1964).

On appeal the Court of Appeals in its opinion styled Lumbermens Mutual Casualty Company v. Harleysville Mutual Casualty Co., 367 F.2d 250 (4th Cir. 1966), remanded the case to this court for further proceedings to determine if State Farm Mutual Automobile Company is liable to Lumbermens Mutual Casualty Company for contribution on a judgment rendered in favor of Gertrude Sutphin Southern in a lower court proceeding. Gertrude Southern was awarded the judgment due to injuries sustained on September 1, 1959, when the car in which she was riding with Ray Dalton and others was struck by a truck belonging to Walter and Franklin Crigger. She recovered the judgment against the Criggers and Ray Dalton as joint tort-feasors. Lumbermens Mutual as the liability insurer of the Criggers paid the entire judgment, although Ray Dalton was an insured under an automobile liability policy issued to his father, William Matthew Dalton, by State Farm.

The two defenses asserted by State Farm, being the only issues to be decided by this court, are as follows:

(1) That William Dalton, and his son, Ray Dalton, the insureds, failed to give timely notice of the accident to State Farm.

(2) That said insureds failed to comply with the policy contract in respect to co-operation.

Pursuant to the wishes of the Court of Appeals, this court, sitting without a jury, took evidence on April 27, 1967, as to the applicability of these two policy defenses. A transcript of the hearing has since been made available to the court. On the basis of the transcript of that hearing and the exhibits then introduced, as well as a review of the entire record, this court in accordance with Rule 52 of the Federal Rules of Civil Procedure makes the following findings of fact.

William Matthew Dalton owned a 1954 Ford and customarily used this car to carry himself, his son and three other passengers to and from work at the Burlington Mills. On the morning of the accident, September 1, 1959, William's

car would not start. His son, Ray Dalton, had recently purchased a 1955 Ford automobile. William Matthew Dalton asked Ray if his car could be used, and stated to Ray that he, William, "would be responsible". The reason for William Dalton's statement that he would be responsible was that Ray's driving permit had recently been revoked and had not yet been restored.

Ray Dalton was driving when the accident occurred, and had stopped partly on and partly off the paved surface of the highway. After the accident occurred, it was agreed by all persons in the car and by Mrs. Ruby Felts, for whom they had been stopped and waiting, that all would say that William Dalton had been driving. This deception was the result of William Dalton's previous promise to Ray that he would be responsible. William had no motive other than that of protecting Ray from the serious consequences which both thought would result if the Virginia authorities discovered that Ray had been driving without a permit. The deception did not arise from an intent to secure liability insurance coverage. Every indication is that both Ray and William believed the car to be uninsured even if William had been the driver.

When Ray returned home that same afternoon he found that his permit had been returned. Nevertheless, the deception was continued, and on September 30, 1959, William Dalton stood trial and was convicted for improper parking. The court finds that continuing the deception was not for the purpose of obtaining insurance coverage.

Mrs. Southern was hospitalized for almost two weeks following the accident. After she returned home, she informed the Daltons that she did not blame them for the accident and that she would not sue them.

On November 15, 1959, William Dalton was notified by the Division of Motor Vehicles that his license would be revoked and his tags recalled unless he was able to demonstrate that he was insured at the time of the accident on September 1.

William Dalton's own automobile had been involved in minor accidents, both before and after Ray Dalton's accident, and William Dalton had reported these accidents to his insurer, State Farm. When he received the notice from the Division of Motor Vehicles that his right to drive would be suspended, he immediately turned to his insurer, State Farm.

On November 26, 1959, William Matthew Dalton informed the State Farm agent, Mr. Philip E. Hoback, that the Division of Motor Vehicles had called for the license tags on his car and was revoking his driver's license. He asked for assistance, stating that the difficulty had arisen out of an accident on September 1, 1959, when he was driving Ray's car. This was the first notice that State Farm had of the occurrence of the accident. It was eighty-six days after the date on which the accident had taken place. Mr. Hoback did not know at that time if State Farm could be of help to William Dalton, and therefore, he referred the matter to the company.

William Dalton's reason for not having reported the accident to State Farm earlier was his belief that since Ray's car was involved, there was no coverage under William's State Farm policy. This finding is buttressed by the fact that each time William Dalton's automobile had been involved in an accident, even when it was being driven by someone else, the accident was reported immediately to State Farm. The conclusion drawn is that William Dalton, who knew nothing at that time of the concept of a temporary substitute automobile, believed that the insurance was tied to the car and since the car insured by State Farm had not been involved in the accident, there was no insurance coverage.

After William Dalton had retained an attorney, Mr. Alan Groseclose, who informed State Farm of facts which

caused Mr. Dalton's automobile to be classed as a temporary substitute automobile, on February 8, 1960, William Dalton signed an accident claim report indicating that he had been driving his son's car and had pulled off the hardtop as far as possible. Also on February 8, 1960, William Dalton told State Farm that on the day of the accident he had gone down to his car to drive to work but that his car would not start. He said he felt that the damp, wet weather had caused the trouble. No mechanic was called September 1 to work on the car and no work was done on it that day. On September 18, 1959, he traded his 1954 Ford for a 1957 Ford.

After having written William Dalton a non-waiver letter on April 1, 1960, reserving its rights to its policy defenses, State Farm on April 8, 1960, filed the SR–21 allowing William Dalton to reclaim his license tags and his driver's license. During the period from May 1960, through September of 1960, the Dalton matter was under investigation by State Farm Insurance agents. The principal question at that time apparently was whether the car was a temporary substitute automobile, and conflicting statements were obtained from various witnesses as to why, in fact, Ray's car had been used in place of William's on that particular occasion. The Court of Appeals found on the basis of the parties' factual stipulation that the car was indeed a temporary substitute automobile. This court finds on the basis of the same stipulation that William's car would not operate. It was necessary that some car be used to get the Daltons and their passengers to work. Ray's car was there; it ran, and consequently, it was used. This court further finds that any conflict in the various statements is incidental and immaterial for present purposes.

On May 6, 1961, Gertrude Southern filed suit against the Criggers, William Dalton and Ray Dalton. The suit papers were delivered to State Farm on May 15, 1961, and on May 17 State Farm wrote letters to both of the Daltons informing them that the suit papers had been referred to State Farm's attorneys who would defend the case. Those letters instructed the recipients to co-operate with the attorneys and the insurance company and also advised that since the amount claimed was in excess of the policy limits, each of the Daltons should retain an attorney to represent him personally. At this time, State Farm did not know that Ray Dalton had been the driver of the car. Nevertheless the tenor of the May 17 letter received by Ray Dalton was such that Ray believed that the State Farm Insurance Company would be appearing on his behalf.

A demurrer was filed on behalf of William Dalton by State Farm on May 19, 1961. No responsive pleading was filed on behalf of Ray Dalton, because State Farm was unaware that he had been the driver of the vehicle. A letter dated June 15, 1961, from State Farm reasserted its reservation of rights to deny coverage to William Dalton and anyone claiming coverage under his policy.

Because Harleysville Mutual Casualty Company, Mrs. Southern's insurance carrier, was joined as a defendant on the theory of uninsured motorist coverage, and because of the allegation in the motion for judgment that both Daltons were driving, State Farm undertook to investigate further the identity of the driver. Additional question and answer statements were taken under oath from both Ray and William Dalton. Both Daltons continued to insist that William had been the driver. Relying on these statements, later that same day, counsel for State Farm filed an answer admitting that William Dalton had been the operator of the motor vehicle. Four days later Ruby Felts contradicted her previous statement and testified that Ray, not William, had in fact been the driver. This was the first positive indication to State Farm of Ray's involvement, but at this point Ray was in default.

Counsel for State Farm then, on June 29, 1961, wrote opposing counsel requesting permission to file an amended answer neither admitting nor denying that William Matthew Dalton had been driving. This request was refused by letters in reply dated July 1 and July 3, 1961. At a pre-trial conference, however, which took place on July 7, 1961, State Farm was given until July 17 to file an answer either admitting or denying the operation of the motor vehicle by William Dalton.

On July 10, 1961, a second sworn statement was taken from William Dalton. For the first time, he admitted that Ray had been driving his own car on the day of the accident. He then explained that his car would not start and that Ray took his car and that he, William, had said that he would be responsible for it. On July 17, 1961, an amended answer was filed on behalf of William Dalton denying that he had been driving the car. At this point it was not only clear that Ray and not William was the potential tort-feasor but also that Ray was not represented by counsel and was in default. Counsel for State Farm accordingly informed all other counsel that he would apply for leave to file an answer on Ray's behalf. In response, on August 28, 1961, counsel for Mrs. Southern filed a motion for default judgment against Ray Dalton. At a pre-trial conference held September 6, 1961, the court determined that Harleysville's answer filed as Mrs. Southern's uninsured motorist insurer would accrue to Ray Dalton's benefit and would prevent a default judgment against him.

Soon after discovering the identity of the driver, State Farm on August 7, 1961, wrote in letters to William and Ray Dalton that the case was being handled under a complete reservation of rights because of late notice, lack of cooperation, possibility of the vehicle having been used as a livery conveyance and because Ray Dalton's car may not have been a temporary substitute vehicle. William Dalton had previously executed a general non-waiver agreement on June 27, 1960. He had also executed a second such agreement on June 24, 1961. Ray Dalton had executed a similar non-waiver agreement on June 24, 1961.

At the trial on November 29 and 30, 1961, counsel for State Farm at the close of the plaintiff's evidence moved to strike the evidence as to William Dalton as it showed that he was not the driver of the automobile. This motion was granted and William Dalton was removed from the case by summary judgment in his favor. Counsel for State Farm did not undertake to defend Ray Dalton. Because of its position as Mrs. Southern's uninsured liability insurer, Harleysville Mutual and its counsel were placed in the posture of acting in Ray Dalton's defense. To this end counsel for Harleysville took the position that Ray Dalton was guilty of no negligence, made a motion to strike the evidence as to him and offered instructions as to his defenses.

Judgment went against the Criggers and Ray Dalton in the amount of $25,000 which verdict was upheld by the trial court and by the Virginia Supreme Court of Appeals. On January 4, 1962, after the appeal had failed, State Farm wrote Ray Dalton a full disclaimer letter in which it took the position that it had no duty to pay the judgment rendered against him. State Farm wrote that Ray and his father had breached several policy provisions, thereby breaching the policy contract and discharging State Farm's liability for coverage. The specific grounds were set forth.

## ISSUES

(1) *Did the Daltons fail to co-operate with their insurer so as to breach their insurance policy and discharge State Farm from any liability on the policy?*

The provision in the insurance contract between State Farm and William Dalton requiring co-operation by the in-

sured is generally found in standard automobile liability insurance policies. The provision is in the nature of a condition precedent, being a condition of the insurer's liability on the policy. If this provision is breached, the policy is at an end if the insurer so elects. State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949). But the failure to co-operate must be material and substantial in order to be a breach of the policy contract, and an immaterial misstatement or failure to co-operate is inconsequential. 29 Am.Jur., Insurance section 789; 34 A.L.R.2d 264, 267.

The co-operation of the insured is necessary to enable the insurance company to investigate and defend the matter in the most efficient and effective manner. The co-operation provision is interpreted as "requiring that the facts of an accident should be fairly, fully and accurately reported." State Farm Mut. Automobile Ins. Co. v. Arghyris, supra, 55 S.E. 2d at p. 23.

The Daltons misled their insurance carrier about the identity of the driver and continued to give this false statement to State Farm for almost two years after the accident occurred. Not until after the motion for judgment had been filed and State Farm's answer had been filed did William Dalton finally admit on July 10, 1961, that he had not been driving Ray's car when the accident occurred on September 1, 1959. When questioned by State Farm on previous occasions, William and Ray Dalton had repeatedly stated that Ray was driving.

By the weight of authority, false and fraudulent statements by the insured to his insurance carrier constitute a breach of the co-operation clause of an insurance contract if the fraudulent action is material and substantial. See generally, Anno: 34 A.L.R.2d, 264. But in cases where the false statements have been corrected promptly, the courts have refused to find a breach of the co-operation clause by holding that no substantial or material violation resulted.

General Acc. Fire & Life Assur. Corp. v. Rinnert, 170 F.2d 440 (5th Cir. 1948). The Daltons did not correct their false statements promptly; they waited almost twenty-two months to do so. The correction occurred only after State Farm had filed an answer asserting that William Dalton was the driver of the car at the time of the accident. The deceit forced State Farm to pursue its investigation and formulate its defense under an erroneous belief. The deceit also necessitated an amendment to State Farm's answer so as to deny that William was driving, thereby recorded the fact that both Daltons had lied. In addition, the Daltons had influenced many of the witnesses most valuable to State Farm's case to participate in the deception—a factor affecting their credibility with the jury.

The court realizes that the Daltons engaged in the deception with no intent to defraud the insurance carrier, but only to protect the son, Ray Dalton. However, the court finds that the false and fraudulent statements were continued for almost twenty-two months after the accident, being corrected only after State Farm had prepared its defense and filed its answer; that the deception was of such a nature and extended for such a period of time as to be a material and substantial failure to co-operate with the insurer, State Farm; and that this failure to co-operate breached the insurance policy and discharged State Farm from any liability for the accident of September 1, 1959.

While it is our view that State Farm was prejudiced, yet under the law of the State of Virginia it is unnecessary to show that the lack of co-operation prejudiced the insurance carrier. The only requirement in Virginia is that the lack of co-operation be of such a material and substantial nature as to be a breach of the contract. State Farm Mut. Automobile Ins. Co. v. Arghyris, supra. There was no necessity for a showing of prejudice to State Farm once it was shown that the Daltons violated a provision of the insurance contract. See

Harmon v. Farm Bureau Mut. Automobile Ins. Co., 172 Va. 61, 200 S.E. 616 (1939). However, Virginia courts do consider the factor of prejudice when determining if the actions of the insured are material and substantial. Cooper v. Employers Mut. Liability Ins. Co., 199 Va. 908, 103 S.E.2d 210 (1958). Shipp v. Connecticut Indemnity Company, 194 Va. 249, 72 S.E.2d 343 (1952).

The 1966 amendment to the 1950 Va. Code Ann. § 38.1–381 (a1) (Additional Supp.1966) apparently requires prejudice to be shown from the lack of co-operation, but this amendment (effective June 13, 1966) applies prospectively to insurance policies which are to be "issued or delivered." Therefore, the amendment would have no application to the case at bar.

Lumbermens has argued that State Farm waived any defenses to liability on its policy with William Dalton. This argument requires only a brief rebuttal. Before State Farm filed the SR-21 form with the Division of Motor Vehicles of Virginia, it wrote William Dalton a letter dated April 1, 1960, expressly retaining any possible policy defenses. State Farm again wrote William Dalton on June 15, 1961, emphasizing that by undertaking his defense it was not waiving any rights or defenses on the policy. Also, William Dalton on June 27, 1960, as well as on August 7, 1961, signed a non-waiver agreement with State Farm recognizing and consenting to State Farm's retention of any policy defenses to liability.

■■ State Farm did not waive any policy defenses by filing the SR-21 form or by investigating the accident. Grady v. State Farm Mutual Automobile Insurance Co., 264 F.2d 519 (4th Cir.1959). Furthermore, State Farm was ignorant of the Daltons' deceit and failure to co-operate until after they filed their answer. State Farm could not have waived the defense based on the insureds' failure to co-operate before that time, since a right or defense cannot be waived without knowledge that the right or defense exists.

The court therefore finds that State Farm never waived any policy defense but rather was extremely careful to preserve such defenses. Nor did State Farm ever indicate to the Daltons that any waiver of policy defenses was ever made; on the contrary, State Farm continually informed the Daltons that the investigation and defense were pursued while retaining all policy defenses. The Daltons were properly informed and not misled by State Farm and there can be no validity in any assertion that State Farm should be estopped from raising the policy defense of failure to co-operate.

■ State Farm had no contract with Lumbermens. Lumbermens' claim for contribution arises only through the contract between State Farm and William Dalton. The claim for contribution is subject to the same defenses and disabilities as a claim by William Dalton against State Farm. Since State Farm has a valid defense against William Dalton, the policyholder, it also has a valid defense against Lumbermens and is not liable for contribution. State Farm Mut. Automobile Ins. Co. v. Arghyris, supra. Hunter v. Hollingsworth, 165 Va. 583, 589, 183 S.E. 508 (1936); 18 A.L.R.2d 474.

2. *Did the Daltons give timely notice of the accident to State Farm?*

■■ It is well accepted in Virginia as elsewhere that provisions in an insurance policy requiring timely notice of accident and claims, and requiring the forwarding of suit papers are reasonable and valid and must be complied with by the insured. The purpose of such clauses is obviously to give the insurer an opportunity to make a timely investigation of all the circumstances and to prepare an adequate defense, if necessary, on behalf of the insured. North River Insurance Company v. Gourdine, 205 Va. 57, 135 S.E.2d 120 (1964). Also, under Vir-

ginia law prejudice is implicit in the insurance company's ignorance of the accident; proof of prejudice is unnecessary. State Farm Mutual Automobile Ins. Co. v. Douglas, 207 Va. 265, 148 S.E.2d 775 (1966), (T. Gordon, J., dissenting).

Where there is a failure to give the required timely notice, the insured may overcome the defect by demonstrating a proper excuse for the delay. Temple v. Virginia Auto Mutual Insurance Company, 181 Va. 561, 25 S.E.2d 268 (1943). Generally, the resolution of whether the notice was given "as soon as practicable" is a factual one to be made by the jury or by the court sitting without a jury. State Farm Mutual Automobile Ins. Co. v. Douglas, supra.

Lumbermens contends that there were two excuses for the delayed notice being given State Farm eighty-six days after the date of the accident. First, that the Daltons believed Gertrude Southern would not bring suit against them. Secondly, that the Daltons believed Ray's car was not covered by William's policy contract with State Farm. The mere belief that the injured party will not sue is not a sufficient excuse for the delay in giving notice. Hunter v. Hollingsworth, supra. There may be more logic in the defense that the Daltons believed, as reasonably prudent men, that Ray's car was not covered by the State Farm policy. However, the court having decided that State Farm has a valid defense of lack of cooperation feels it is unnecessary to decide the issue of timely notice.

In accordance with the foregoing opinion, it is declared, adjudged and ordered that Lumbermens Mutual Automobile Insurance Company is denied the right of contribution from State Farm Mutual Automobile Insurance Company. Nothing contained herein is to prejudice the rights, if any, of Lumbermens from asserting a claim for contribution from Ray Dalton.

Each party to this action shall bear his or its own costs.