# Richmond.

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. KITTS' ADMINISTRATOR.

### January 14, 1909.

1. VERDICTS—*Credibility of Witness—Jury Sole Judges—Appeal and Error—Case at Bar.*—The jury are the sole and final judges of the credibility of witnesses. So long as a witness testifies to facts which, if true, are sufficient to maintain the verdict, the fact that his credit is impeached by an attack upon his character, or by contradictory statements—especially conflicting statements made out of court—affects only his credibility, and goes to the weight and sufficiency of his testimony, not to his competency. If the jury, in their discretion, see fit to base their verdict upon his testimony, and the trial court refuses to disturb that verdict, there can be no relief in an appellate court. In the case at bar, the verdict in the main rests upon the testimony of a witness who shifted his position without hesitation, whose statements as a witness were contradicted by his letters written during the progress of negotiations concerning the policy of insurance which is the subject of litigation, and who was seriously discredited throughout the trial, and yet the jury have seen fit to credit him, and the trial judge has approved their verdict. Under such circumstances, the verdict cannot be disturbed in this court.

Error to a judgment of the Circuit Court of Tazewell county in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Henry & Graham,* for the plaintiff in error.

*Greever & Gillespie, J. N. & J. W. Harman,* for the defendant in error.

Keith, P., delivered the opinion of the court.

Frank D. Kitts, as administrator of James M. Kitts, recovered a judgment in the Circuit Court of Tazewell county for the sum of $2,000, upon a policy issued by the Equitable Assurance Society upon the life of James M. Kitts, deceased; and to that judgment a writ of error was issued by this court, upon the petition of the defendant.

Errors are assigned to the rulings of the court upon the demurrer to the declaration, upon the admissibility of evidence, upon the instructions given to the jury, and to the refusal of the court to set aside the verdict as contrary to the evidence.

The evidence is of a very unusual character. The case in the main will be found to rest upon the testimony of a witness, who was the agent upon the part of the insurance company to solicit insurance, who was the son of the person insured, and who has, since his death, become his administrator. These facts of themselves are sufficient to excite caution as to the weight to be given to his testimony.

It will appear, when his testimony comes to be considered, that he shifts his position without hesitation; that what he asserts as a witness is contradicted by his letters, written during the progress of the negotiation; and it is difficult to conceive how greater discredit could have been thrown upon him as a witness than will be disclosed by this record; and yet the jury have seen fit to give credit to his testimony, and they are the final judges of the credibility of witnesses.

When the law says that it is for the jury to judge of the credibility of a witness, it is not a matter of degree. So long as a witness deposes to facts which, if true, are sufficient to maintain their verdict, then the fact that his credit is impeached by an attack upon his character, by contradictory statements—especially when it is sought to contradict his testi-

mony by conflicting statements made out of court—affects only his credibility, and goes not to his competency but to the weight and sufficiency of his testimony. If the jury, in their discretion, see fit to base their verdict upon his testimony, and the trial court refuses to disturb that verdict there can be no relief in an appellate court.

We have stated an extreme case, but a case which in our judgment is fully sustained by the great weight of authority.

The facts which the evidence tends to prove, subject to the jury's opinion as to the credibility of the witness, are as follows: Frank D. Kitts was the agent of the Equitable Society, at Tazewell, Va. As such agent he sent in the application of James M. Kitts for a policy of insurance upon his life for the sum of $2,000. This policy is dated October 24, 1904; was sent to a Mr. Steiner, who was the general agent of the company at Roanoke, Va., who transmitted it in due course to Frank D. Kitts, the local agent, who informed his father, the insured, that the policy had arrived. In a day or two after the receipt of the policy, he received from his father the sum of $20, and the policy was delivered. James M. Kitts, the father, upon receipt of the policy, handed it to his son with instructions to put it in his safe for safekeeping along with other papers belonging to the father. At the time of this transaction it was agreed between the father and the son, the agent and the insured, that the balance of the premium should be paid at a future day. Kitts, the agent, sent Steiner a check for the $20 which he had received, and that check is in evidence and states on its face that it is in "part payment on life policy 1,384,238, J. M. Kitts, Equitable," and is made payable to H. H. Steiner, general agent; and on its back is endorsed "H. H. Steiner, Gen'l Agt. For deposit to the credit of H. H. Steiner, Gen'l Agt.".

On the 23rd of November, 1904, Steiner informed Kitts by letter that his stenographer had made a mistake when he

had told Kitts that he would be entitled to a commission of fifty *per cent.* upon the premium on this policy. The entire premium was $79.76, upon which Kitts thought, in consequence of what he had been told by Steiner's stenographer, that he would be entitled to a commission of fifty *per cent.;* whereas, he was entitled only to a commission of ten *per cent.* upon a non-participating policy such as the one issued in this case. Steiner, therefore, demanded the balance due upon the premium after the payment of the $20, which was $51.78.

To this Kitts replied on the 12th of December: "I am returning above policy to you by to-day's mail, as I was under the impression when I made out the application that there was at least 40 *per cent.* commission in it. Will thank you to return check by first mail."

To this demand for the return of the check, Steiner replied on December 17, 1904: "Replying would say that before taking action on this policy I will await the result of your interview which you told me personally you were going to have in regard to this contract. Please advise me at once in regard to it so that I can take up the matter of return of premium paid by you."

December 19, Frank D. Kitts replied to this communication as follows: "Beg to advise that I have had a talk with the above assured (meaning his father, Jas. M. Kitts,) and he states that he is not willing to make balance of payment and will thank you to return check less examination fee."

To this Steiner replied on December 23: "I am taking up the matter with the home office to-day relative to the return of the part premium paid by you. I will advise you in due course as to this matter."

On January 12, a letter was written to Steiner by A. W. Maine, associate auditor of the company, as follows: "We notice your statement that you collected $20.00 on account premium, and that the assured says he cannot pay the balance, but

is willing to pay the medical fee; also your enquiry as to whether the assured should be charged term rate, and we would inform you that the concession of allowing a policy to be returned as N. T. O. (not taken out) and settled for on a term rate basis, is a privilege which in certain cases is extended to an agent in order to reduce his loss, say where a note is taken which cannot be collected, and it is not to be understood that an assured may be permitted to settle for his policy other than on the basis as issued. Besides, the *pro rata* premium for the time the policy has been in force, plus the medical fee, would exceed the amount collected from the assured. We are willing to allow this policy to be marked off your account on the payment of the medical fee and $15.00 as premium for which we allow you the same rate of commission as·provided in your contract on the policy as issued, we being furnished with a letter from the assured, if the same is obtainable, stating that the amount paid by him is to apply toward the cost of carrying this policy for the time it was in force." (Signed) "A. W. Maine, associate auditor."

Upon the receipt of this letter, Steiner, on the 14th of January, 1905, wrote to F. D. Kitts as follows: "I beg to hand you copy of a letter just received from the home office relative to this case. You can see from this explanation that there will be practically no refund on this case under the ruling of the society. You will also note from the letter that they agree to allow the same rate of commission as allowed on the regular policy which would be $1.50, $15.00 being the premium. I will be very glad to send you a check for this amount if you will obtain for me a letter stating that the amount paid by the assured is to apply toward the cost of carrying this policy for the time it was in force.

"You will readily see, Mr. Kitts, the justness of the position taken by the Equitable in this case, as this policy has been in full force and effect from the time it was delivered to you until action was taken on it at the home office on January

12, and the society must be paid for carrying the risk for that length of time."

To this letter Kitts replied on the 16th of January, 1905: "I have your favor relative to cancelled policy No. 1,384,238, Kitts, and advise that I am surprised at the action taken by the company. The policy never was in force and was not delivered to assured. I feel just this way about it: If the company proposes to keep the $15.00, the amount is so small that I have no way to get at them and I consider it a very dirty piece of business on their part. There was a misunderstanding as regards the commission as you well know. I am sure the policy was not in this office but a short time and during that time I was corresponding with you as regards the commission. If the company is so little as to keep the $15.00 they can do so, but it will be the last cent they will ever get from me, and I will do everything in my power to show up their dirty way of doing business. Now they can do just as they please, but you know everybody has some influence."

Kitts wrote again on January 24th: "We have your favor of recent date and notice the Equitable refuses to allow a return premium of $15.00 under the Kitts policy. Now this policy was never in the hands of the assured, and as there was a misunderstanding as regards the commission, of which fact you are well aware, we do not see why the Equitable should not return the $15.00. There was no liability on the company's part for the reason that policy was never in the hands of the assured. We trust you will see that the return premium of $15.00 is paid to us at once."

On January 30, 1905, Steiner writes from Roanoke: "On my return to the city this morning after a week's absence, I found your favor of the 24th instant, and immediately forwarded same to the home office for their attention. I will advise you as soon as possible as to their decision in the matter, which I trust will be satisfactory to you."

The next letter is the one of February 15, 1905, as follows,

written by A. W. Maine, the associate auditor: "We should be pleased to do anything permissible in this case in order to accommodate you and shall make you the out-and-out concession of allowing a settlement on a term rate basis, with the understanding that it shall not affect the usual rule.   We would also state that it should be understood that any payments made by assured belong to the society and are not held subject to his option or the agent's as to the disposition to be made of same. We make the term rate for say 2 months, $5.00.   Please furnish us with the statement referred to in the fifth paragraph of the N. T. O. form."

Now we approach the *denouement.*   On February 17, 1905, Frank D. Kitts addressed the following note to H. H. Steiner: "I beg to advise that the assured under the above number has recently died.   During his life time I tried to secure the proper return of premium from you under this policy, but as yet you have made no return; furthermore, there has been no release on the part of the assured, hence, we will ask you to give this matter prompt attention."

And the same day Frank D. Kitts addressed the society, at New York, as follows: "Kindly advise me the status of policy No. 1,384,238—James M. Kitts, if the first premium has been paid."

To this inquiry an answer was addressed to Frank D. Kitts, care of H. H. Steiner, Roanoke, on February 23, 1905: "We acknowledge receipt of your favor of the 17th instant relative to policy No. 1,384,238, issued by this society upon the life of James M. Kitts, and in reply beg to say that according to our records this policy was returned for cancelation, no premium having been paid upon it."   Signed "Recorder" without any name.

And the correspondence is closed by a letter addressed to F. D. Kitts, as follows, dated June 5, 1905: "I beg to inclose you herewith check to your order for twenty dollars ($20.00),

being the amount deposited with Mr. Steiner in connection with policy No. 1,384,238—Kitts. Kindly acknowledge receipt of the enclosed check, and oblige. Very truly yours, P. G. Allison, cashier."

It appears from this correspondence that down to the date of the death of James M. Kitts, the plaintiff in this action, who is the administrator of the assured, and was at the same time the agent of the insurance company, was earnestly asserting that the policy had never been delivered; that it was never in force; that it was not binding upon the company; and was demanding a return of the partial payment which he had made upon it. On the other hand, the insurance company was insisting that the policy had been delivered; that it was in force from the time it was issued until the 12th day of January; refused the demand for the return of the partial payment; and insisted upon its right to deduct from that payment a term rate for the period during which the policy had, according to the contention of the company, been in force.

Upon the death of the assured, which took place on the 13th of February, 1905, both parties executed a "right-about-face," and from that moment Mr. Frank D. Kitts asserted that the policy had been delivered; that all he had said in his letters was untrue; that his father was in complete ignorance of his action; that the old man had gone to his grave with the full belief that the policy was locked up in the safe in his possession and under his control; while the insurance company, on the other hand, turned about and claimed, that the policy never had been delivered; that the company never had been responsible; and returned the premium with respect to which the correspondence had taken place, which has been set out in this opinion.

Now these facts are substantially set out in the declaration. The admissibility of this evidence is in certain particulars excepted to by the plaintiff in error. It is made the basis of

certain instructions, which are also excepted to, and its probative force is called in question by a motion to set aside the verdict as contrary to the evidence.

Without going into a detailed discussion of these various assignments of error we shall content ourselves with saying that the declaration sets out a good cause of action, from which it plainly appears that the company, with knowledge of all the facts, acquiesced in a delivery of the policy. Upon a demurrer, of course, all the facts properly pleaded in the declaration are taken as true. Those facts are then established by testimony which is admissible and sufficient, if the witness is to be believed, and the law was fairly put before the jury in the instructions. The credibility of the witness was solely a matter for the jury, and they have seen fit to accept what he states as true. It presents, as we have before said, a most remarkable state of facts, but one under which the court does not feel that it can with propriety disturb the verdict of the jury, which has been approved by the trial court.

The judgment must, therefore, be affirmed.

*Affirmed.*