Robert J. CONNELL, Appellant,

v.

INDIANA INSURANCE COMPANY, a/k/a Consolidated Insurance Company, Appellee.

No. 9170.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1964.

Decided July 22, 1964.

A. Andrew Giangreco, Michael Jamgochian, Alexandria, Va., John A. Beck, Washington, D. C., on brief for appellant.

W. W. Koontz, John S. Stump, and Boothe, Dudley, Koontz & Blankingship, Alexandria, Va., on brief for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge.

Plaintiff, Robert J. Connell, was injured while driving an automobile owned by Mrs. Donna R. Osburn. He obtained a judgment against Mrs. Osburn and in the present action seeks satisfaction of that judgment, within policy limits, against her insurer, Indiana Insurance Company.[1] The insurer (hereinafter Indiana) defended on the ground that the actions of its insured constituted a breach of the "cooperation clause" of its policy which relieved it of all liability for Connell's injury.

### The Previous Action

Some understanding of the nature of the action between Connell and Mrs. Osburn is necessary to a discussion of the issues presented in the instant case.[2] The evidence in the trial of the first action disclosed that on July 27, 1960, Mrs. Osburn telephoned Connell and asked if he would assist her in moving some of her belongings from an apartment in Alexandria, Virginia, to a newly rented apartment in Arlington, Virginia. Connell agreed and arrangements were made for him to use her car. While so engaged he sustained an injury to his left hand. According to his testimony, the accident occurred when the door on the driver's side flew open as he was backing the automobile; he lunged for the open door, momentarily losing control of the vehicle, and caught his hand between the door and a utility pole as the automobile collided with the pole.

At the time of the accident there was in effect an automobile liability insurance policy issued by Indiana in which Mrs. Osburn was the named insured. Indiana was notified of the accident and on October 11, 1960, pursuant to Virginia Code section 46.1–451(a) (Michie 1958), it filed with the Commissioner of Motor Vehicles a form entitled "Notice of Policy Under the Virginia Motor Vehicle Safety Responsibility Act." The form, commonly known as an "SR 21" form, purported to give notice that the Indiana policy was in effect and that it applied to any liability of Mrs. Osburn arising out of the accident. Thereafter, in March of 1961, Connell instituted the action against Mrs. Osburn to recover damages for his personal injuries. Indiana furnished counsel to represent Mrs. Osburn and to defend the action on her behalf.

At the trial of the action for damages Connell testified that he was driving Mrs. Osburn's automobile at her request; that the automobile had a defective door latch which caused the door to swing open; that Mrs. Osburn had not informed him of the defect and he was not aware of it; that he had driven the automobile on only two or three occasions prior to the accident.

Plaintiff called Mrs. Osburn as an adverse witness and, in her testimony, she

---

1. Mrs. Osburn was also joined as a defendant in this action but she filed no answer or other pleading and the case proceeded against Indiana Insurance Company.

2. Portions of the transcript of that trial were introduced in evidence in the case at bar.

virtually admitted liability. For example, she testified that the door latch was defective and that the door would sometimes spring open without warning; that she had known of the defect for some six months prior to the accident but had not informed plaintiff of it.

In an effort to counter these damaging admissions, counsel for Mrs. Osburn sought to call as witnesses for the defense Mr. and Mrs. Edward Coppola, friends of Mrs. Osburn who had been with her and Connell on the night following the accident, but Mrs. Osburn objected and the court refused to permit the Coppolas to be called by her counsel without her consent. Upon Mrs. Osburn's continued refusal to permit these witnesses to testify, counsel retained by Indiana to represent Mrs. Osburn stated in open court that this refusal of the insured would be regarded as non-co-operation under the policy and that he would remain as her counsel in the case, reserving, however, any rights Indiana might have due to her failure to co-operate in defending against plaintiff's claim.[3]

The District Court found for the plaintiff in the first action and awarded damages in the amount of $17,500.00. Judgment was entered on November 2, 1961. On November 9, 1961, counsel who represented Mrs. Osburn at the trial advised the court that he was withdrawing as her counsel because she had violated provisions of the policy and Indiana was not liable thereunder.

### The Instant Case

Indiana refused to pay plaintiff's judgment and, on February 6, 1962, Connell brought this action against Indiana in the District Court for the Eastern District of Virginia to collect his judgment or up to $15,000, the limited policy coverage. Indiana contended that by colluding with Connell to defraud the insurer and refusing to permit the Coppolas to be called as witnesses, Mrs. Osburn had violated a provision of the policy requiring her co-operation and, therefore, Indiana was not liable there-

3. The following colloquy appears in the transcript of that proceeding:

"MR. STUMP: If Your Honor please, in this case I represent Mrs. Donna Osburn, as an insurer [sic] of the Indiana Insurance Company. My firm and I have been retained to defend her against liability in this case. There are two witnesses available to the Court whom I propose presently to call, but Mrs. Osburn has indicated to me that she does not feel that they should be called, because of the dual position in which I find myself I want to be candid with the Court and say that I will call them in the honest belief that they will assist in getting to the bottom of this controversy and resolving it, but I also do not wish to place Mrs. Osburn in the position of having been responsible for their being brought into the Courtroom because she made clear to me that she does not feel they should be brought into the Courtroom in this case."

*        *        *        *        *

"THE COURT: * * * However, the defendant is in person the sole one and if the defendant in her own rights as an individual advises the court that she does not want a certain witness called the Court will not permit that witness to be called."

*        *        *        *        *

"MR. STUMP: If Your Honor please, my client still tells me that she will not permit us to call Mr. and Mrs. Coppola to the stand. I would state to her privately. I would like to state on the record that we regard this as non-cooperation.

"MR. GIANGRECO: I object to that statement.

"MR. STUMP: And we will henceforth proceed in the case if she wants us to do so under the reservation of any rights we may have as a result of her non-cooperation.

"THE COURT: For the record, of course, insofar as your relations with Mrs. Osburn is concerned that is a private matter between the two of you. The Court will not allow you to withdraw as counsel in this stage of the proceedings.

"MR. STUMP: I do not seek to do so. I will tell my client that we must proceed under the reservation of whatever rights we may have."

under. Specifically, Indiana relied upon the following policy provisions:

> "5. *Assistance and Cooperation of the Insured.*
>
> \* \* \* \* \* \*
>
> "The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. \* \* \*"
>
> "6. *Action against Company*
>
> \* \* \* \* \* \*
>
> "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

At the trial of the instant case before court and jury, Indiana introduced a deposition of Mrs. Osburn, taken subsequent to the conclusion of the action in which plaintiff's judgment was obtained, in which she substantially contradicted her earlier testimony. Mrs. Osburn stated therein that Connell had frequently driven her automobile; that he was aware of the defective door latch and had discussed it with her prior to the accident; that she had deliberately withheld this information from Indiana and had perjured herself in the previous trial at the direction of Connell. Mrs. Osburn testified further that although Connell had offered to divide the proceeds of any recovery with her, she had assisted in perpetrating fraud upon the insurer because of Connell's threats of bodily harm to her and her young son.

Indiana also called as witnesses in the instant proceeding Mr. and Mrs. Edward Coppola. Both testified to the existence of a close relationship between Connell and Mrs. Osburn and that they had seen Connell driving Mrs. Osburn's car on a number of occasions. Mrs. Coppola testified, in addition, that on the night following plaintiff's injury, Connell gave an account of the accident entirely different from that given by him at trial and which indicated that the accident was due solely to his own negligence.[4]

The plaintiff offered no evidence on the issue of non-co-operation except the testimony of Mr. Stump, the attorney who represented Mrs. Osburn in the previous action. He testified merely to the effect that Mrs. Osburn had conferred with him prior to trial and had appeared for the taking of a pretrial deposition. Connell did not testify in this proceeding; the testimony of Mr. and Mrs. Coppola and the deposition of Mrs. Osburn were uncontradicted. The trial below resulted in a jury verdict in favor of the insurer, Indiana.

■■■ On this appeal, plaintiff contends that Indiana was precluded from raising the defense of non-co-operation by certain provisions of the Virginia Motor Vehicle Safety Responsibility Act (Va.Code §§ 46.1–388 to 46.1–514

---

4. On direct examination Mrs. Coppola testified as follows:

"Q. I will begin with that. The night they were at your apartment, did they make any statements concerning this accident in the presence of one another and your presence?

"A. Yes, sir.

"Q. What did they say?

\* \* \* \* \* \*

"A. Mr. Connell told us how the accident happened. He was helping Mrs. Osburn move. The car was filled with clothes, and he was driving the car late at night, and he wanted to back up, but he couldn't see and he opened the door in order to look back, at which time he ran into a telephone pole, a tree, or whatever it was, and caught his finger in the door and the door slammed closed on him, and that is what he told us."

(Michie 1958)). Principally, plaintiff relies upon section 46.1–511 of the Virginia Code. In pertinent part that section provides:

"* * * Every policy shall be subject to the following provisions which need not be contained therein:

\* \* \* \* \* \*

"(f) No statement made by the insured or on his behalf and no violation of the terms of the policy shall operate to defeat or avoid the policy so as to bar recovery within the limits provided in this chapter."

The Virginia legislature, however, has made it abundantly clear that the provisions upon which plaintiff relies apply exclusively to policies certified as proof of financial responsibility pursuant to the requirements of the Motor Vehicle Safety Responsibility Act.[5] This court and the Supreme Court of Appeals of Virginia have held that those provisions have no application to automobile liability insurance policies which have been voluntarily procured. See Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793 (4 Cir. 1949), cert. denied, Beverage v. Farm Bureau Mut. Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950); Virginia Farm Bureau Mutual Insurance Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268 (1963); State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949); cf. Insurance Co. of North America v. Atlantic National Ins. Co., 329 F.2d 769 (4 Cir. 1964).

It is undisputed that the policy issued to Mrs. Osburn and upon which plaintiff bases his asserted right to recover was a voluntary one. In the language of the Saccio case, supra, Mrs. Osburn was a "desirable," not a "statutory," risk.[6]

Plaintiff apparently contends, however, that the filing by Indiana of the SR 21 form had the effect of converting the voluntary policy into a "certified" policy rendering the insurer absolutely liable thereafter. Such a contention was rejected by this court in Grady v. State Farm Mutual Automobile Insurance Co., 4 Cir., 264 F.2d 519 (1959). There, as here, the insurance carrier set up a breach of the co-operation clause of the policy as a defense to any liability thereunder. The plaintiff, who had previously obtained a judgment against the insured, contended that the insurance carrier was precluded, under the law of Virginia, from relying on the breach of the co-operation clause because it had filed the required SR 21 form. In rejecting the plaintiff's contention, the court pointed out that "[t]he certificate in this case merely showed that the policy afforded coverage at the time of the accident but it did not admit liability." Id. at 522. The recent decision of this court in Insurance Co. of North America v. Atlantic National Ins. Co., 329 F.2d 769 (1964), and that of the Supreme Court of Appeals of Virginia in Virginia Farm

---

5. Va.Code § 46.1–509 (Michie 1958) provides that "[t]he provisions of this chapter shall not apply to any policy of insurance except as to liability thereunder incurred after certification thereof as proof of financial responsibility."

Under Va.Code § 46.1–442 (Michie 1958), the Commissioner of Motor Vehicles is required to suspend the operator's license and registration certificates and plates of any person who has failed to satisfy a judgment arising out of an automobile accident. In order that his driving privileges may be restored, such a person must not only pay the outstanding judgment but provide proof of his financial responsibility in the future. Va.

Code § 46.1–459(b) (Michie 1958). The required proof of financial responsibility may be provided by showing that an automobile liability insurance policy has been procured and is in full force and effect. Va.Code § 46.1–468(a) (Michie 1958). A policy issued as proof of financial responsibility of one legally required to provide such proof is termed a "certified policy" and, as provided in Va.Code § 46.1–509 (Michie 1958), it is to such policies only that the restrictive provisions relied upon by plaintiff apply.

6. Virginia Farm Bureau Mutual Insurance Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268, 272 (1963).

Bureau Mutual Insurance Co. v. Saccio, 204 Va. 769, 133 S.E.2d 268 (1963), make it clear that the filing of an SR 21 form does not convert a voluntary policy into a certified one nor does it render the insurance carrier absolutely liable. We recognized in Insurance Co. of North America v. Atlantic National Ins. Co., supra, that the filing of an SR 21 form might, in an appropriate case, be considered together with other circumstances as indicative of a waiver by the insurer of the right to rely upon certain policy provisions. In this case, however, the filing of the SR 21 form was not evidence of an intention to waive the defense of the insured's non-co-operation of which Indiana was not at that time aware.[7] For the same reason, representing and defending Mrs. Osburn in the action brought by Connell cannot be considered evidence of waiver. The record discloses that prior to the trial in that action, Indiana had no knowledge that Mrs. Osburn was wilfully failing to co-operate. That knowledge was brought forcefully home to Indiana for the first time when, in the course of trial, Mrs. Osburn refused to permit the Coppolas to be called as witnesses for the defense. Thereupon, counsel retained by Indiana to defend Mrs. Osburn stated in open court that he considered her refusal a breach of the co-operation clause and that he would continue in the case, reserving, however, any rights Indiana might have due to the breach.[8] Other circumstances from which a waiver could be implied are totally lacking in this case. We conclude that Indiana was clearly entitled to rely upon the lack of insured's co-operation as a defense to liability under the policy.

Finally, Connell contends that the District Court erred in refusing to give the following requested instruction:

"The Jury is instructed that the failure to cooperate must be in some substantial and material respect, and in determining whether the failure was in fact substantial and material, the jury could consider whether the company was prejudiced thereby."

This contention also is without merit. It is true, as plaintiff contends, that lack of co-operation in some minor and inconsequential respect does not constitute a breach of the co-operation clause under the law of Virginia. See Nationwide Mutual Insurance Company v. Gentry, 202 Va. 338, 117 S.E.2d 76 (1960); Shipp v. Connecticut Indemnity Co., 194 Va. 249, 72 S.E.2d 343 (1952); State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949). And, although it is well established that an insurance carrier need not establish prejudice in order to rely on a breach of the co-operation clause,[9] the Virginia Supreme Court of Appeals, in the Gentry case, supra, held that it was not error to give an instruction in the form requested by Connell. However, such an instruction was not required in the circumstances here and it was not error to refuse it.

The evidence introduced by Indiana, and uncontradicted by the plaintiff, disclosed that Mrs. Osburn not only withheld relevant and material information but resorted to deliberate misrepresentations which were calculated to create liability where none existed. By her own admission, Mrs. Osburn colluded with Connell to defraud the insurance company. In furtherance of her effort to perpetrate fraud, she refused to permit witnesses to testify who could have given material testimony tending to negate liability. Unlike Shipp v. Connecticut Indemnity Co., 194 Va. 249, 72 S.E.2d 343 (1952), upon which plaintiff principally relies, the lack of co-operation established by the evidence in this case was clearly substantial and material. Cf. State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16

7. Compare Virginia Mut. Ins. Co. v. State Farm Mut. Auto Ins. Co., 204 Va. 783, 133 S.E.2d 277 (1963).

8. See footnote 3, supra.

9. See, e.g., Shipp v. Connecticut Indemnity Co., 194 Va. 249, 72 S.E.2d 343 (1952); State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (1949).

(1949). The District Court could quite properly have determined as a matter of law that a breach of the co-operation clause such as disclosed by the evidence was material. In these circumstances, giving the instruction requested by Connell would only have tended to create a spurious issue in the mind of the jury.

The issue of non-co-operation was properly submitted to the jury and the jury's verdict for the defendant is overwhelmingly supported by the evidence.

Affirmed.