Marcia M. BRYANT, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

Marcia M. BRYANT, Plaintiff,

v.

CONNECTICUT FIRE INSURANCE COMPANY, Defendant.

Civ. A. Nos. 5999, 6178.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 29, 1968.

that neither would mere "compliance provisions."

Walkley E. Johnson, Jr., Norfolk, Va., for plaintiff.

E. Pryor Wormington, Norfolk, Va., for defendant, Liberty Mut. Ins. Co.

Harvey E. White, Jr., Norfolk, Va., for defendant, Connecticut Fire Ins. Co.

## MEMORANDUM

KELLAM, District Judge.

Plaintiff obtained a judgment in the State Court against Daniel W. Evans, hereafter called Evans, for $32,000.00 and court costs, for personal injuries

sustained in a collision between an automobile operated by her and belonging to her mother, and an automobile operated by Evans, belonging to Budget Rent-A-Car, hereafter called Budget. In the State action Budget, originally made a party defendant, was dismissed. When payment of the judgment was not made, plaintiff instituted suit against Liberty Mutual Insurance Company, hereafter called Liberty, and a similar suit against Connecticut Fire Insurance Company, hereafter called Connecticut. Liberty was the insurer of Budget, with liability limits in excess of the amount of the judgment. Connecticut was the insurer of the automobile of plaintiff's mother, with a Virginia uninsured motorist provision attached, with limit of $15,000.00 for one person. The actions against the two insurers were consolidated for trial before a jury.

Connecticut's liability in the case was under the uninsured motorist provisions of its policy. That is, there was no liability upon it if the automobile operated by Evans was covered by the policy issued by Liberty to Budget. Liberty had denied liability for failure of Evans to cooperate. Hence, if Liberty's denial of liability was upheld, then Connecticut was liable to the extent of its policy limits of $15,000.00. Therefore, the only issue for determination by the jury was whether there was liability on Liberty. If so, Connecticut was out and judgment would be discharged in full by Liberty. All parties agreed on this. The matter came on for trial before the jury, and on the issue submitted to the jury (which was the only issue in the case) it found that Evans failed to cooperate with Liberty in a material and substantial respect, and therefore liability was imposed on Connecticut. Plaintiff's and Connecticut's counsel each moved the Court to set aside the verdict. They assigned as grounds:

1. The verdict was contrary to the law and the evidence.

2. Error in the admission and refusal to admit evidence.

3. Error in the charge to the jury.

■ In a pretrial conference Liberty admitted that plaintiff had obtained a judgment against Evans, and upon such admission moved the Court not to permit plaintiff to say in opening statement to the jury or present in evidence (1) the amount of the judgment, (2) the limits of liability in the policies of Connecticut and Liberty,[1] and (3) the fact that if Liberty was relieved from liability Connecticut would be liable, but only to the amount of $15,000.00. The Court granted Liberty's motion. This action constitutes the first error assigned by plaintiff. The amount of plaintiff's judgment had nothing to do with whether Liberty was justified in denying liability. It had denied liability and withdrawn from the case before the judgment had been obtained. Likewise, the extent of liability of Liberty and Connecticut as defined in their respective policies was of no assistance to the jury in determining the real issues. Whether the judgment was for $1,000.00 or $100,000.00 was not the issue before the jury. If the evidence had been presented to the jury, it would have enabled plaintiff to argue that if Liberty was excused from liability, plaintiff would have recovered less than half of its verdict. It could only create sympathy for plaintiff. The jury could not hold against both. It was a case of either Liberty or Connecticut.

■ Next plaintiff says the verdict is contrary to the law and the evidence. This necessitates setting out a brief summary of it. If there is credible evidence to support the verdict, the Court cannot substitute its findings or conclusions for those of the jury. Courts are not free to re-weigh the evidence and set aside the jury verdict merely because the Judge feels another result is more reasonable, or merely because the jury could have drawn different inferences or conclu-

---

1. All counsel were aware of the policy limits. The motion was to keep the information from the jury.

sions. Tennant v. Peoria etc., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520.

Evans rented an automobile from Budget. While operating said automobile he was in collision with a car driven by plaintiff, in which plaintiff was injured. Suit for damages followed in the State Court against Evans and Budget. Budget was subsequently dismissed. Following the accident Evans notified Budget, and Budget notified Liberty. Evans was charged with traffic violations. He failed to appear and was convicted. Evans never delivered the suit papers to Liberty or Budget, but Liberty did get the copy of suit papers which were served on Budget. The accident occurred January 13, 1966. On January 28, 1966, Evans called the office of Liberty by telephone and talked to Mr. Polasko for about 30 minutes. Evans contended the accident was not his fault; that he had a green light to permit him to proceed through the intersection, while the plaintiff was running a red light. He told Polasko he could contact him through Mr. Morris Fine, whom he had employed to defend him on the traffic charges. On the day set for hearing on the traffic charges, Evans failed to appear. Fine had the hearing continued to a later date. On the day of hearing Evans failed to appear, was convicted, and a capias issued for his arrest. In the meantime Liberty had tried to contact him at the address which he had given and through his attorney, without success. Liberty contacted the police in an effort to locate Evans for further interviews. He could not be located at the address which he had given, or at any other address. Liberty contacted Evans' wife and mother but could not locate him. In fact, process had been served on Evans by leaving a copy at his mother's home "alleged to be his usual place of abode", but Evans could not be found there and his mother did not know his whereabouts. Counsel for Liberty (as well as Liberty's adjusters and claimsmen) tried to contact Evans without success. Letters written to him at various addresses where he was alleged to be lodging were returned to the senders. Neither the police, Evans' attorney, Liberty's attorney nor Liberty's other agents could locate Evans. His mother nor his wife knew his whereabouts. Subsequently, Evans was picked up by the police and lodged in jail. Upon notice from plaintiff's counsel that Evans was in jail, counsel for Liberty went to the jail to see him on March 16, 1966. He was not able to get Evans to talk to him. He went back on March 21, 1966, at which time Evans told him he did not feel he could cooperate unless Liberty's counsel would cooperate with him by having a detainer, which had been lodged against Evans by the police authorities from Georgia, released. Liberty's counsel said he would try to find out the circumstances of the detainer and report to Evans. This he did, and on March 25, 1966, again tried to discuss the facts of the accident with Evans, but Evans refused to discuss them. Again, on March 29, 1966, Liberty's counsel went to the jail to see Evans, but he again refused to discuss the case and said he would not cooperate unless Liberty's counsel took care of the Georgia situation. He said that unless Liberty would put up money for him to clear up the Georgia matter, he would tell them nothing and would not cooperate. Notice was given by Connecticut's counsel to take Evans' deposition while he was in jail (Def.Ex. 14). He refused to talk to Liberty's counsel about this, but did agree to talk to Mr. White, Connecticut's counsel. Evans was subsequently transferred to Georgia. While there he wrote Liberty's counsel (Def.Ex. 18) under date of June 14, 1966, and said he needed $115.00 (he had previously asked Liberty's counsel to advance him funds, which was refused), and that "I stand ready to cooperate with the party who is willing to assist me 'at this time.'" Previously, on February 15, 1966, Liberty's counsel had responded to plaintiff's suit by filing proper pleadings on behalf of Budget and Evans. Following receipt

of Evans' letter of June 14, 1966, Liberty's counsel determined Evans' action was an offer to cooperate if paid to do so, and determined to withdraw from further representation of Evans. He gave notice that on July 8, 1966, he would ask leave of the Court to withdraw, which leave was granted (Plaintiff's Exhibits 5 and 6).[2] This was similar to what Evans had suggested earlier in a note to Liberty's counsel while Evans was in jail in Norfolk.[3]

Thereafter, Connecticut took over the defense of the suit. It contacted Evans in Georgia and he agreed to appear. He was out of custody at time of trial, and there was evidence he was in Virginia when the collision case was tried. In any event, he had Connecticut make advances to him of funds to cover his travel to Virginia to enable him to be present at trial and to testify. He failed to appear for trial or offer any explanation for such failure. The efforts of Liberty to contact Evans and obtain his cooperation are not only shown by the verbal evidence, but by copies of letters written him on February 9, 1966 (Def. Exhibits 3, 4 and 5), February 15, 1966 (Def. Exhibits 6 and 7), and February 22, 1966 (Def. Exhibits 8, 9 and 10).

■ The burden was on Liberty to prove by a preponderance of the evidence that Evans failed to give the cooperation[4] contemplated by the insurance policy, North River etc. v. Gourdine, 205 Va. 57, 135 S.E.2d 120, 124, and whether such failure was in a material and substantial respect. Shipp v. Connecticut etc., 194 Va. 249, 72 S.E.2d 343, 348;

Nationwide Mutual Ins. Co. v. Gentry, 202 Va. 338, 117 S.E.2d 76, 81; Connell v. Indiana etc., 334 F.2d 993 (4th Cir. 1964). These are questions of fact. The jury has found adversely to plaintiff. North River etc. v. Gourdine, supra; Nationwide Mutual Ins. Co. v. Gentry, supra. The verdict is amply supported by the evidence.

■ Plaintiff next complains that there was error in permitting Liberty to show the actions and conduct of Evans in failing to appear at the State Court trial after Liberty had withdrawn from the defense of the State Court damage action and denied liability. Liberty was permitted to show that after it withdrew from the State Court case and Connecticut took over the defense, that Evans agreed to appear and testify as a witness, as he had suggested he would do before Liberty withdrew, but in fact did not appear, even though Connecticut advanced the cost of his travel, and he had been released from custody. However, the Court specifically charged the jury that such evidence was admitted and could be considered by them for whatever probative value it had in supporting or failing to support the correctness of Liberty's decision to withdraw on July 8, 1966, and that if Liberty failed to establish by a preponderance of the evidence that up to July 8, 1966 (date of withdrawal) Evans had not cooperated with it and they then were not justified in withdrawing, then they could not consider any events which occurred after July 8, 1968 as justifying the withdrawal. Plaintiff had contended Liberty should not have withdrawn so soon; that Evans would have

2. In a letter of May 13, 1966 (Def.Ex. 16), Evans wrote from Georgia to Liberty's counsel asking for an advance of $115.00, which Liberty's counsel had said they would probably advance at the proper time to cover Evans' travel from Georgia to Norfolk. He wanted it then and said that if it was advanced to him, he "in turn, will offer you all the cooperation I can concerning the suit."

3. On March 21, 1966 (Def.Ex. 11), Evans said he would cooperate, but would like

counsel's cooperation in return, and that the outcome of the plaintiff's suit for $100,000.00 "depends greatly on what I have to say."

4. Grady v. State Farm Mutual Auto. Ins. Co., 264 F.2d 519 (4th Cir. 1959); Connell v. Indiana etc., 334 F.2d 993 (4th Cir. 1964); State Farm Mutual Auto. Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16.

cooperated and attended trial. In dealing with a similar question in Chesapeake & Ohio Ry. Co. v. Golladay, 164 Va. 292, 180 S.E. 400, at 407, the Court quoted the following from Jones on Evidence:[5]

> But when there is such logical connection between the fact offered as evidence and the issuable fact that the proof of the former tends to make the latter more probable or improbable, the testimony proposed is relevant, if not too remote. The competency of a collateral fact to be used as a basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry or to assist, though remotely, to a determination probably founded on truth.

Lastly, plaintiff complains of that portion of the Court's charge which, among other things, told the jury that cooperation means that at all times there should be a fair, frank and truthful disclosure of information so that the company could determine whether there is a genuine defense. The objection is to the words "at all times." To say that Evans was not required to give a fair, frank and truthful statement at all times would be to say he could tell the truth one time and an untruth at another time and leave the company to guess at its liability or what type of defense it could make. It could not have been taken to mean that he was required hourly or daily to make a statement to the company because the charge said this requirement said the disclosure was of information "reasonably demanded by Liberty to enable it to determine whether there is a genuine defense." In view of the complete charge, the jury was not in any way misled. The company was entitled to a fair, frank and honest statement,[6] reasonably demanded, not different statement, or failure to make any statement.

As between plaintiff and Connecticut, plaintiff says it is entitled to recover $15,000.00, together with interest on the full judgment of $32,000.00 from date of judgment to date of payment, for Connecticut's failure to pay the $15,000.00 when judgment was entered. It bases this contention on the provisions contained in the following language from the policy:

SUPPLEMENTARY PAYMENTS. To pay, in addition to the applicable limits of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;"

Connecticut says that the provisions of the endorsement "A 689a Protection Against Uninsured Motorists Insurance" attached to the policy in question, exclude the above provision for payment. The endorsement says:

POLICY PROVISIONS: None of the insuring Agreements, Exclusions, Conditions or Other Provisions of the policy shall apply to the insurance afforded by this endorsement except the Conditions "Notice" or "Notice of Accident," "Subrogation," "Changes," "Assignment," "Cancellation" and "Declarations."

5. Quoted and approved in Roanoke Hospital Ass'n v. Hayes, 204 Va. 703, 133 S.E.2d 559, 565, 1 A.L.R.3d 1026. See also United States v. Lumantes, D.C., 139 F.Supp. 574, 575, where evidence of subsequent conviction for narcotics smuggling was admitted as evidence to show intent to deceive.

6. Home Indemnity Co. v. Standard Accident Ins. Co., 167 F.2d 919, 925 (9th Cir.); Tillman v. Great American Indemnity Co., 207 F.2d 588, 591 (7th Cir.)

The above-mentioned endorsement provides for limits of liability of $15,000.00 to one person and $30,000.00 to one accident. It contains its own "Insuring Agreements," "Exclusions" and "Conditions." Under paragraph numbered 5(a) under "Conditions", it provides:

LIMITS OF LIABILITY:

(a) The limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of such liability stated in the schedule as applicable to "each accident" is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

The endorsement in question covers "uninsured motorists" and is required to be attached pursuant to Statute of Virginia. The requirements of the State are for coverage of $15,000.00 to one person and $30,000.00 to one accident. Supplemental payments set out and provided for in PART I—LIABILITY, of the policy, are not required. The company was not required to provide for the payment of interest on any judgment obtained under the uninsured motorist insuring agreement if it did not wish to do so.[7] The fact that it provided for this under the general bodily injury provision did not prevent the company from eliminating it from the uninsured motorist provisions. Since the uninsured motorist provisions limit the company's liability, and such limit is in accordance with law, it is only required to pay interest on the $15,000.00 and not on the total amount of the judgment from date of judgment to time of payment.

---

7. Matthews v. Allstate Ins. Co., 194 F.Supp. 459, 463 (E.D.Va.1961).