## CIRCUIT COURT OF CAROLINE COUNTY

Virginia Farm Bureau
Mutual Ins. Co.

    v.

Donald L. Etheridge, Jr., et al.

June 9, 1988

Case No. L88-000027

By JUDGE WILLIAM H. LEDBETTER, JR.

Virginia Farm Bureau Mutual Insurance Company has brought this declaratory judgment action to determine whether it is obligated to provide coverage under its insurance contract with Donald L. Etheridge, Jr., in connection with an automobile accident which occurred on August 31, 1986.

The Company joined the administrator of the victim's estate, the victim's statutory beneficiaries, and Etheridge, as defendants. Etheridge, personally served, is in default and failed to appear or participate. The other defendants filed responsive pleadings and participated in the trial of this case on June 8, 1988.

On August 31, 1986, Janice Terrell Green was fatally injured as the result of a hit-and-run accident in Caroline County. Aided by an informant's tip, the police investigation focused on Etheridge.

Etheridge was charged with felony hit-and-run and involuntary manslaughter. After a preliminary hearing on June 12, 1987, the charges were certified to the grand jury, and indictments were returned at the July 1987 term.

On September 30, 1987, the cases were nolle prossed on motion of the commonwealth's attorney. (Apparently, this action was taken because the witness whose statements provided the key link between Etheridge and the fatality left the jurisdiction and refused to cooperate further.)

Meanwhile, Leroy L. Green qualified as administrator of the decedent's estate and retained an attorney to pursue the matter. On February 26, 1987, Etheridge and his insurer were notified of the civil claim. No lawsuit has been instituted, although it is apparent that Green intends to do so within the period of limitations.

The Company concedes that Etheridge is the named insured under a policy of automobile liability insurance in effect on the date of the accident. The Company asserts, however, that it is not obligated under the policy because Etheridge has breached the terms and conditions of the insurance contract.

The policy was introduced into evidence by stipulation. The following provisions are contained under the heading "Conditions":

> 3. Notice - Parts I, III and IV: In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the name and addresses of the insured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable . . . . If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative . . . .
>
> 5. Assistance and Cooperation of the Insured - Parts I and III: The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or

loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses . . . .

The failure or refusal of the insured to cooperate with or assist the company which prejudices the company's defense of an action for damages arising out of the operation or use of an automobile shall constitute noncompliance with the requirements of the policy that the insured shall cooperate with and assist the company.

6. Action Against Company - Part I: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy . . . .

Green's claim is governed by Part I of the policy, which provides liability coverage. Part II concerns expenses for medical services, Part III covers property damage, and Part IV contains uninsured motorist insurance provisions.

Therefore, insofar as is pertinent to this case, the policy imposes three obligations upon the insured: (1) to give notice to the company of any accident or occurrence as soon as practicable, (2) to give notice to the Company of any action instituted against the insured, and (3) to cooperate with and assist the Company in defending, settling, or otherwise dealing with any claim.

The performance of provisions requiring notice of an accident and the furnishing of information as to claims made or actions brought is a condition precedent to recovery under the policy. On a number of occasions, the Virginia Supreme Court has held that such provisions requiring action on the part of the insured are reasonable contractual terms that will be enforced. *See, e.g., Harmon v. Farm Bureau*, 172 Va. 61 (1939); *State Farm Mutual v. Douglas*, 207 Va. 265 (1966). The insurer has the burden to establish as an affirmative defense that the insured failed to comply with such provisions.

Prior to 1966, no showing of prejudice was required of the insurer. Rather, the Court held that the noncompliance had to be "substantial" and "material," and prejudice was one circumstance to be considered on the question of materiality. *Shipp v. Connecticut Indemnity*, 194 Va. 249 (1952); *Cooper v. Insurance Company*, 199 Va. 908 (1958).

In 1966, the General Assembly amended Virginia Code Section 38.1-381, now § 38.2-2204, to require that all auto liability policies provide coverage notwithstanding the insured's failure or refusal to cooperate, unless such failure or refusal prejudices the insurer in its defense of an action for damages. § 38.2-2204(C).

The effect of that legislation is to require the insurer to prove prejudice when it denies coverage by reason of the insured's violation of the "cooperation and assistance" provisions of the policy.

In *State Farm Mutual v. Porter*, 221 Va. 592 (1980), the Court was called upon to decide whether the 1966 amendment applies to the "notice" provisions as well as the "cooperation and assistance" clauses. The Court held that it does not.

> The notice provisions are not included within the paragraph of the policy relating to the insured's duty to cooperate with the insurer. Our cases have distinguished between the notice requirements and the cooperation provisions. *Porter, supra*, at 598.

In 1980, the General Assembly further amended Section 38.1-381 (now § 38.2-2204) by adding a provision that if an insurer has actual notice that an action has been instituted against an insured, the insured's failure to deliver suit papers does not defeat coverage unless the insured otherwise fails to cooperate and the insurer is prejudiced thereby. § 38.2-2204(C).

Although the 1980 amendment was not applicable in *Porter*, the Court referred to that amendment in its decision, and made the following observation:

> It appears from the 1966 and 1980 amendments that the focus of the General Assembly has been limited to two different categories of

policy provisions requiring action by the insured, i.e., provisions requiring cooperation and assistance, and provisions requiring prompt delivery to the insurer of suit papers. In either of these categories, *but not otherwise*, the insurer must prove both violation and prejudice in order successfully to deny coverage. *Porter, supra*, at 598. (Emphasis added.)

It is difficult to see how the Company has been prejudiced by the delay in receipt of notice of the claim or by Etheridge's unwillingness to cooperate. The Company acquired knowledge of the claim on March 10, 1987, from Green's attorney. No action has been instituted. The key witness, whose unavailability the Company complains of, was in the area at least until mid-June 1987; she testified at Etheridge's preliminary hearing on June 12, 1987. In any event, that complaint has a hollow ring to it since the witness's knowledge is supposedly detrimental, not helpful, to Etheridge and, consequently, the Company. Further, her information is not that of any eye-witness, but is based on admissions allegedly made by Etheridge. Etheridge is still in the area and has been interviewed by Company representatives. On May 20, 1987, he admitted to the Company that he was operating the vehicle that struck the victim, but denied that he was responsible for her fatal injuries.

However, it is now well settled that a policy requirement that the insured give its insurer written notice of an accident as soon as practicable is a condition precedent to coverage, requiring substantial compliance, and no showing of prejudice is necessary. *See Porter, supra*; *Erie Insurance Exchange v. Meeks*, 223 Va. 287 (1982); *Liberty Mutual v. Safeco*, 223 Va. 317 (1982).

On September 4, 1986, Etheridge reported to a Farm Bureau agent in Bowling Green that his car had been struck while parked in the Safeway shopping center lot that day. He said that his front bumper was "badly bent." W. L. Tingler, Jr., who took the information by telephone, verified the bumper damage by visual inspection and authorized payment for repairs under the property damage provisions of Etheridge's policy. Etheridge, of course, made no reference to the incident of August 31, 1986, and had no further

contact with the company regarding anything until investigators located him and interviewed him in the spring of 1987.

Green contends that the Company was put on notice of the accident by Etheridge's property damage claim of September 4th. This position is untenable. A claim for bumper damage arising out of a parking lot incident on September 4th is not notice of a fatality on August 31st. In fact, unless there really were two separate incidents within a week, Etheridge's bumper damage claim appears to have been fabricated. Surely, a false claim cannot be construed as compliance with the notice provisions of the policy.

Nevertheless, Green argues, the Company's inspection of Etheridge's vehicle provided something akin to "inquiry notice," in that Tingler should have been suspicious enough to investigate further. This contention, too, is without merit. First, Green offers no evidence to suggest that the Company would have learned of the incident of August 31st even if it had been suspicious and had made further inquiry. Less than a week after the fatality, not even the police had information pointing to Etheridge as the operator of the hit-and-run vehicle. Second, Tingler refuted this suggestion by his testimony. He said that a "parking lot bumper damage claim" does not, without more, arouse suspicions, since he handles approximately fifty of them a year. He further stated that in this particular case he saw nothing to make him dubious of Etheridge's claim because the bumper damage appeared to be consistent with a parking lot collision.

Finally, Green points out that the Company received notice, by way of correspondence from his attorney, in early March 1987. As discussed above, the fact that the Company may have obtained knowledge of the claim, from some other source, in time to avoid prejudice in defending an action, is not dispositive. By statute, prejudice is now relevant where the insurer claims noncompliance with "cooperation and assistance" clauses and "delivery of suit papers" clauses, § 38.2-2204(C), but not to a separate policy provision requiring notice of the accident. *See Porter, supra,* and *Safeco, supra.*

Whether notice of an accident has been given to

the insurer "as soon as practicable" is generally a question of fact. Substantial compliance is required.

Here, the record shows that rather than substantial and material compliance, there was a willful violation of the policy requirement that Etheridge give notice of the accident. He *never* gave any notice. The Company first learned of the accident through other means more than six months later.

Whether the General Assembly should have expanded the scope of its 1966 and 1980 amendments to ameliorate the impact of the Court's earlier interpretations of the notice requirements is beside the point. It did not, and it has chosen to refrain from making further revisions to § 38.2-2204(C) notwithstanding the Court's holdings in *Porter, Meeks* and *Safeco.* The court is mindful that the practical effect of this legislative omission, whether considered or inadvertent, is particularly harsh on victims of hit-and-runs. In such cases, by their very nature, the perpetrator will not comply with the notice provisions of his policy. Usually, as here, he will remain discreetly silent, an essential step in avoiding responsibility for his crime, and the innocent third party, for whose benefit most of the auto liability insurance laws were enacted, suffers.

(Virginia Code § 38.2-2226 requires an insurer to give notice to a claimant of its intention to rely on a policy defense, such as breach of a condition of the insurance contract by the insured. This issue was not raised at trial, but, in any event, it appears that such notice was given promptly after discovery of the breach.)

Etheridge having given no notice of the accident to the Company, without any justification whatever, the court holds that such wilful failure constitutes a breach of the policy condition in question and justifies the Company's denial of coverage under the insurance contract. Accordingly, the plaintiff's prayer for relief will be granted.